USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 94-1603 CARMEN CLEMENTE, Plaintiff, Appellant, v. CARNICON-PUERTO RICO MANAGEMENT ASSOCIATES, L.C., ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _________________________ Adrian Mercado for appellant. ______________ Jose A. Fuentes Agostini, with whom Totti, Rodriguez Diaz & ________________________ _______________________ Fuentes and Carlos A. Ramos were on joint brief, for appellees. _______ _______________ _________________________ April 14, 1995 _________________________ SELYA, Circuit Judge. Plaintiff-appellant Carmen SELYA, Circuit Judge. ______________ Clemente brought an unsuccessful negligence suit against several defendants affiliated with La Concha, a resort hotel in San Juan, Puerto Rico.1 She now appeals. After carefully considering her plaints, we affirm. I. BACKGROUND I. BACKGROUND On August 11, 1992, appellant, a citizen of New York, traveled to Puerto Rico. She registered as a guest at La Concha. At 10:30 that evening, while exiting the piano bar, appellant slipped on the second step of a small, carpeted stairway. Having neglected to use the handrail, she plummeted to the floor, posterior first, sustaining a fractured right ankle and other injuries. Invoking diversity jurisdiction, 28 U.S.C. 1332 (1988), appellant brought suit in the United States District Court for the District of Puerto Rico. In her complaint, she posited two theories of tortious conduct under Puerto Rico's general negligence statute,2 alleging that the defendants not only failed to keep the stairs free of foreign substances but also inadequately illuminated them. The first allegation stemmed  ____________________ 1For simplicity's sake, we do not distinguish among the entities that have been sued, but refer to them collectively as "the defendants." 2The statute provides in pertinent part: A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. . . . P.R. Laws Ann. tit. 31, 5141 (1991). 2 from appellant's claim that the stairs, at the time of her tumble, were suffused with some sort of liquid (an inference that she drew from the dampness in her pants and on her person following her spill). Trial commenced on April 20, 1994. At the close of the plaintiff's case, the judge remarked that visiting the accident scene might assist the jury. When neither party objected, the judge ordered a view to take place at approximately 7:00 p.m. In implementing the order, the judge provided very little structure. He neglected to give the jurors any detailed instructions or to enlist the court reporter's participation. Once the entourage reached La Concha, the jurors conversed freely among themselves and at least one juror touched foot to stair. It is alleged though disputed that the jurors also spoke with the judge. Despite these informalities, appellant did not object at any point before or during the view, nor did she solicit any jury instructions concerning the view, nor did she request the presence of a reporter. It was not until the next day that appellant for the first time objected to the view and, concomitantly, moved for a mistrial. The judge overruled her objection and denied her motion. Even then, appellant neither asked to interview the jurors nor requested any sort of curative instruction. At the close of all the evidence, the district court defenestrated the claim of careless maintenance, granting the defendants' motion for judgment as a matter of law under Fed. R. 3 Civ. P. 50(a), and sent the case to the jury only on the parallel claim of poor illumination. Appellant did not ask the court to comment on the evidentiary status of the view in its instructions, and the court did not do so. The jury returned a defendants' verdict. Before us, appellant asserts that the jury verdict should be set aside because the defects associated with the view warranted a mistrial. Additionally, she assigns error to the district court's handling of her negligent maintenance claim. We take these grievances one step at a time. II. THE VIEW II. THE VIEW Appellant's principal assignment of error features the district court's denial of her motion for a mistrial. The asseveration rests on the premise that defects associated with the view required a new beginning. Thus, the question presented reduces, in the first instance, to the status of the view itself. In order to secure our footing, we begin with common ground: a federal court, exercising its inherent powers, may allow a jury in either a civil or a criminal case to view places or objects outside the courtroom. See United States v. Passos- ___ _____________ _______ Paternina, 918 F.2d 979, 986 (1st Cir. 1990), cert. denied, 499 _________ _____ ______ U.S. 982 (1991), and cert. denied, 501 U.S. 1209, 1210 (1991). ___ _____ ______ Whether to permit a jury to conduct a view in a particular situation is a question committed to the trial court's informed discretion. See United States v. Pettiford, 962 F.2d 74, 76 (1st ___ _____________ _________ Cir. 1992); United States v. Drougas, 748 F.2d 8, 30-31 (1st Cir. _____________ _______ 4 1984); see generally Hulen D. Wendorf, Some Views on Jury Views, ___ _________ ________________________ 15 Baylor L. Rev. 379, 390-92 (1963) (cataloguing several considerations that may enter into a judge's discretionary decision to grant or deny a view). Though discretionary at the outset, a view, once authorized, should embody certain fundamental safeguards. Collectively, these safeguards are aimed at achieving fairness and maximizing the trial's truth-seeking function. We limn a five-step protocol that a court customarily should follow before and during a view. First, counsel should be alerted to a proposed view at the earliest practicable time and given an opportunity to be heard concerning it. See John R. Allison, Combinations of ___ ________________ Decision-Making Functions, Ex Parte Communications, and Related _________________________________________________________________ Biasing Influences: A Process-Value Analysis, 1993 Utah L. Rev. ______________________________________________ 1135, 1218-19. Second, because the rule in this circuit is that a view does not itself constitute or generate evidence, the jury should be instructed prior to embarking on the view that the view itself is not evidence as such, but, rather, is simply a mechanism to facilitate contextualization of the evidence.3 See 1 Edward J. ___  ____________________ 3While this position represents the majority view, see 2 ___ John W. Strong et al., McCormick on Evidence 216, at 27 (4th ______________________ ed. 1992) (noting that "[a] large number of jurisdictions, probably a majority, holds that a view is not itself evidence"), some courts have ruled to the contrary, particularly in connection with bench trials. See, e.g., Lillie v. United ___ ____ ______ ______ States, 953 F.2d 1188, 1190 (10th Cir. 1992) (stating that a view ______ in a bench trial is evidence, though acknowledging cases to the contrary). But see Processteel, Inc. v. Mosley Mach. Co., 421 ___ ___ __________________ _________________ 5 Devitt et al., Federal Jury Practice and Instructions 5.14, at ______________________________________ 133 (1992) ("Ordinarily, when the jury takes a view the court explicitly instructs them that they are not to consider what they see as evidence in a case, but that the view is merely to enable them to apply the evidence in the case."). Upon timely request of either party, the court should include a similar statement in its final charge. Third, counsel should be given the opportunity to attend the view, although the judge may, in his discretion, place limits on their interaction with the subject of the view and with the jurors. See 2 John W. Strong et al., McCormick on Evidence  ___ _____________________ 216, at 26 (4th ed. 1992); Allison, supra, at 1218-19. _____ Fourth, because the judge's oversight is as necessary at a view as in the course of the trial proper, the judge ordinarily should attend the view. See 2 Strong et al., supra, ___ _____ at 27; Allison, supra, at 1219; Wendorf, supra, at 393. _____ _____ Fifth, the court should employ some method of fully and accurately recording that which transpires at the view, usually by enlisting the attendance of a court reporter. See Lillie v. ___ ______ United States, 953 F.2d 1188, 1191 (10th Cir. 1992) (noting that ______________ where "there is no record of the view, the litigants may effectively be denied any means of challenge on appeal"); Allison, supra, at 1219-20.  _____ We add a caveat: the list we have compiled is not  ____________________ F.2d 1074, 1076 (6th Cir. 1970) (disapproving of "a fact finder using visual inspection . . . in the place of testimony to resolve factual issues"). 6 intended to be exhaustive or inflexible. There may very well be other precautions, not recounted above, that deserve consideration in the particular circumstances of a given case. Similarly, while the enumerated procedures ordinarily should be employed, we are reluctant to impose a rigid format upon the trial bench. Thus, if circumstances warrant, the court may innovate (even if innovation necessitates departing from the list). Last but not least, we emphasize that the onus for implementing these safeguards does not rest exclusively upon the trial judge. When a judge orders a view but strays from the prophylaxis that should accompany it, an offended party must bring the omissions to the judge's attention in a timeous fashion, and, if necessary, lodge a formal objection. A party's failure to take appropriate action will, in most cases, foreclose an appeal predicated on the omission of standard safeguards. The case at bar vividly illustrates this last point. Although the court ignored some of the standard safeguards, appellant did not preserve her right to contest the propriety of what transpired. Before the fact, appellant acquiesced in the court's suggestion that the jury observe the accident scene. She failed either to request that a court stenographer be present or to object when the judge did not spontaneously arrange for the reporter's attendance. And, she compounded these omissions by not asking that the jurors be given explicative instructions. To make a bad situation worse, appellant's lassitude 7 continued after the view had been completed. Though she made speculative allegations of misconduct when she moved for a mistrial, she neither sought an opportunity to conduct a voir dire in order to transform conjecture into hard fact nor requested a curative instruction to alleviate potential harm. Given this history of inattention, the record simply will not support appellant's assignment of error. See, e.g., Reilly v. ___ ____ ______ United States, 863 F.2d 149, 160 (1st Cir. 1988) (stating rule ______________ that "when a trial judge announces a proposed course of action which litigants believe to be erroneous, the parties detrimentally affected must act expeditiously to call the error to the judge's attention or to cure the defect"); Merchant v. ________ Ruhle, 740 F.2d 86, 92 (1st Cir. 1984) (warning against attempts _____ to convert "agreeable acquiescence to perceivable error [into] a weapon of appellate advocacy"); see generally United States v. ___ _________ ______________ Camporeale, 515 F.2d 184, 188 (2d Cir. 1975) (observing that __________ "normally the failure of counsel to register a timely objection to the submission of improper evidence to the jury will be deemed a waiver"). Appellant's eleventh-hour motion to abort the proceedings did not miraculously cure the sapping effects of this string of waivers. Parties cannot casually forgo contemporaneous objections and then make up lost ground by means of an afterthought motion for mistrial. Such a motion is not a ready substitute for a timely objection. See, e.g., United States v. ___ ____ ______________ Tropeano, 476 F.2d 586, 587-88 (1st Cir.) (upholding denial of ________ 8 motion for mistrial where movant forwent several earlier opportunities to correct alleged error), cert. denied, 414 U.S. _____ ______ 839 (1973); Saville v. United States, 400 F.2d 397, 400 (1st Cir. _______ _____________ 1968) (similar), cert. denied, 395 U.S. 980 (1969). A contrary _____ ______ rule would inject gross unpredictability into trials, would be unfair to diligent litigants, and would seriously undermine judicial economy. See Saville, 400 F.2d at 400 (explaining that ___ _______ "`the burden is on the [adversely affected party] to take his objection at the earliest possible opportunity when, by so doing, he can enable the trial judge to take the most efficacious action'") (quoting Holden v. United States, 388 F.2d 240, 242-43 ______ ______________ (1st Cir.), cert. denied, 393 U.S. 864 (1968)). _____ ______ Although appellant waived any objection to the implementation of the jury view, we note that, in all events, the alleged errors seem benign. Appellant describes four potential sources of prejudice: (1) that the judge did not utilize the services of a court reporter or some other means of recordation; (2) that the judge may have conversed with the jury during the view; (3) that one or more jurors may have "experimented" with the stairway in an attempt to recreate the accident; and (4) that the lighting and condition of the stairway during the view were materially different than at the time of the accident. None of these allegations succeeds. The absence of a court reporter, though ill-advised, bears no obvious relationship to the outcome of this case, and, hence, it cannot, without more, be deemed prejudicial. See ___ 9 Northwestern Nat'l Casualty Co. v. Global Moving & Storage, Inc., _______________________________ _____________________________ 533 F.2d 320, 323 (6th Cir. 1976). Similarly, there is no indication that the judge's alleged interaction with the jury which, if it occurred at all, evidently consisted of a juror asking the judge if the bar lights could be activated prejudiced appellant's substantial rights. See, e.g., United ___ ____ ______ States v. Taylor, 562 F.2d 1345, 1366 (2d Cir.) (finding private ______ ______ communication between judge and juror harmless), cert. denied, _____ ______ 432 U.S. 909 (1977), and cert. denied, 434 U.S. 853 (1977). ___ _____ ______ Next, while we do not condone freewheeling experimentation on the jurors' part during a view, what occurred here was apparently limited to a juror scuffing the stairway with the sole of a shoe. Appellant has not suggested how such conduct might have been harmful in fact, cf. People v. Hardy, 825 P.2d 781, 835 (Cal.) ___ ______ _____ (en banc) (finding "no reasonable probability . . . [of] actual prejudice" where the trial court permitted a juror, during a view of a crime scene, to examine a door and to have it opened and closed), cert. denied, 113 S. Ct. 498 (1992), and cert. denied, _____ ______ ___ _____ ______ 113 S. Ct. 987 (1993), especially since the experiment seemingly had relevance only to the negligent maintenance claim a claim that in the long run never reached the jury.4 Finally,  ____________________ 4Another problem with this claim of error is that the trial court has discretion to permit some degree of experimentation by jurors in the course of a view. See Wendorf, supra, at 394 ("In ___ _____ the exercise of sound judicial discretion, it may on occasion . . . be useful to permit the conduct of experiments at the view."). On this sketchy record, there is no principled way that we can find an abuse of discretion in the court's implied consent to the anonymous juror's modest experiment. 10 appellant's conclusory allegation that the conditions surrounding the staircase during the view were "dramatically different than those conditions at the time of the accident" falls far short of establishing that any prejudicial error actually resulted.5 See ___ Northwestern Nat'l Casualty, 533 F.2d at 323 (upholding jury view ___________________________ even though "the appearance of the site had changed since the relevant events"); Martin v. Gulf States Utils. Co., 344 F.2d 34, ______ ______________________ 37 (5th Cir. 1965) (upholding jury view even though the scene's "physical appearance had been substantially altered since the accident"). When all is said and done, we must affirm the denial of appellant's motion for a mistrial despite the absence of precautions accompanying the view's implementation. Because appellant neither preserved her rights nor demonstrated actual prejudice, we are unable to say that the lower court, in refusing a mistrial, abused its discretion. See, e.g., United States v. ___ ____ ______________ Sepulveda, 15 F.3d 1161, 1184 (1st Cir. 1993) ("Granting or _________ denying a motion for a mistrial is a matter committed to the trial court's discretion."), cert. denied, 114 S. Ct. 2714 _____ ______ (1994); Real v. Hogan, 828 F.2d 58, 61 (1st Cir. 1987) ("A motion ____ _____ for mistrial is directed primarily to the sound discretion of the trial court and its ruling thereon will not be disturbed unless that discretion has been misused.").  ____________________ 5In any event, the time to complain about predictable variations resulting from changed circumstances, such as differences in the time of day, is at the outset. Here, plaintiff did not make a peep when the judge scheduled the view to take place in the early evening hours. 11 III. THE DIRECTED VERDICT III. THE DIRECTED VERDICT Appellant also contends that the trial court erred in granting judgment as a matter of law on her claim that the defendants negligently tolerated a hazardous condition on the hotel's premises. Appellant concedes that a hotel is not an insurer of a guest's safety. Nonetheless, she argues that there was enough evidence for a rational jury to find that the defendants knew or should have known of the foreign substance's presence on the stairs in ample time to remove it. Appellant adduced no proof that the defendants had actual notice of the danger. Her claim compresses, therefore, into a claim premised on constructive notice. Her basic theory is that the jury plausibly could have inferred that a liquid was on the stairs for a period of time sufficient for the hotel's staff to have discovered and removed it. We do not agree. A district court may grant a motion for judgment as a matter of law "[i]f during a trial by a jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," and the party's entire claim "cannot under the controlling law be maintained . . . without a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1). In executing this standard, the trial court "must scrutinize the proof and the inferences reasonably to be drawn therefrom in the light most hospitable to the nonmovant . . . [and] must refrain from differential factfinding; that is to say, the court must `not 12 consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence.'" Rolon- ______ Alvarado v. Municipality of San Juan, 1 F.3d 74, 76-77 (1st Cir. ________ ________________________ 1993) (quoting Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. _________ _____ 1987)). Because "the court of appeals is constrained in precisely the same fashion as the district court . . ., and because the key question revolves around the legal sufficiency of the evidence, appellate review is plenary." Id. at 77. ___ In the instant case, appellant offered some evidence from which a factfinder could have concluded that there was a foreign substance on the staircase. Yet, she failed to produce any evidence sufficient to allow a reasonable jury to determine ___ that the hotel had constructive notice of the hazardous condition. The dampness on her clothing may tend to prove the presence of a foreign substance on the stairs, but it does not in any way demonstrate how long the substance may have been there. The personality profile of the hotel is a two-edged sword; although appellant says that the size of the complex, the number of waitpersons, and the scarcity of janitorial help show both an enhanced likelihood of spillage and a diminished ability to discover incipient dangers, the same facts also show that the substance could have emanated from various sources at a variety of times. In short, there is nothing at all from which a rational juror could do more than guess about how long the substance may have been in situ. __ ____ This deficiency causes appellant's claim to stumble on 13 our decision in Mas v. United States, 984 F.2d 527 (1st Cir. ___ _____________ 1993). In Mas, as here, the law of Puerto Rico governed the ___ issue. There, we affirmed the lower court's dismissal of a personal injury action in that case, the plaintiff claimed to have slipped on a small puddle of spilt milk on the floor of an army commissary on the ground that the proof failed adequately to demonstrate that the defendant knew or should have known of the supposedly dangerous condition. In so doing, we held that the very same statute upon which appellant's suit depends, P.R. Laws Ann. tit. 31, 5141, quoted supra note 2, "requires, as an _____ element, an affirmative showing by the plaintiff that the defendant . . . ha[d] either actual or constructive knowledge of a dangerous condition." Mas, 984 F.2d at 530. So it is here.6 ___ We need go no further. In this instance, even if the jury believed that a liquid saturated the stairway, there is no evidence from which it sensibly could infer how long the liquid had been on the stairs. Because that is so, the jury could not have drawn a reasonable inference that defendants knew or should have known of the liquid's existence in sufficient time to have removed it before Clemente appeared on the scene. It follows  ____________________ 6Appellant's reliance on Colon Miranda v. Plaza Las _______________ __________ Americas, 94 J.T.S. 84 (P.R. 1994), takes her one step forward ________ and two steps back. Colon Miranda represents only a judgment and _____________ not an opinion of the Supreme Court of Puerto Rico, and, therefore, carries no precedential value. See Rivera Maldonado ___ ________________ v. Commonwealth of P.R., 119 D.P.R. 74 (1987) (Official English ____________________ Translation: No. R-85-117, slip op. at 4-5) ("It shall not be appropriate to cite, as an authority or as a precedent, judgments that are not Court opinions. A judgment without a Court opinion . . . has no precedential value; it only has the intrinsic persuasive value of its rationale."). 14 inexorably, as night follows day, that the district court appropriately granted judgment as a matter of law in the defendants' favor. Affirmed. Affirmed. ________ 15