USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1189

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 SEAN GRAY,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Steven J. McAuliffe, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 Coffin and Campbell, Senior Circuit Judges.
 
 
 
 
 Bjorn Lange, Assistant Federal Defender, for appellant.
 Mark E. Howard, Assistant U.S. Attorney, with whom Paul M.
Gagnon, United States Attorney, was on brief for appellee.

December 23, 1999

 
 

 COFFIN, Senior Circuit Judge. Appellant Sean Gray was
convicted by a jury on one count of bank robbery and sentenced to
71 months in prison. His sole claim on appeal is that the district
court committed prejudicial error when it instructed the jury that
its view of the robber's escape route was not evidence in the case. 
Although we acknowledge that a jury view may at times be treated as
evidence, we find no reversible error and therefore affirm
appellant's conviction.
 I. Factual Background
 The Community Bank and Trust in Exeter, New Hampshire, was
robbed shortly after 1 p.m. on June 23, 1998. Bank employees
described the lone robber as a male with a goatee and "Fu Manchu"
mustache who was wearing mirrored sunglasses and a blue hooded
sweatshirt. He approached the center teller window, pulled a bag
from under the sweatshirt, and said, "This is no joke; give me your
money." Two bank employees described the robber as having a
significant limp. He "left in a hurry" and was seen running across
the street, along railroad tracks, and then up a hill toward a
bridge that passes over the tracks near Park Street (the "Park
Street bridge"), where he apparently was picked up by a woman in a
white car with Florida license plates. A teacher who lives near
the Park Street bridge saw a man emerge from the footpath near the
railroad tracks and described him as having a very distinct gait
irregularity, or limp. The man was clutching a bag at the time.
Police found a blue hooded sweatshirt on the footpath leading up to
Park Street and a pair of shattered mirrored sunglasses on the
street where the white vehicle had been parked.
 Gray was arrested a week later and charged with bank robbery. 
The district court granted Gray's unopposed motion seeking to allow
the jury to view the bank and the robber's escape route, but
refused his requested instruction that the jury consider the view
as evidence. Instead, the court advised the jurors that their view
of the bank and surrounding area was not evidence, explaining that
it was "intended simply to provide you with points of reference or
a context in which to consider the evidence in this case."
 Defense counsel objected to the instruction, though
recognizing that it was consistent with First Circuit case law. In
Clemente v. Carnicon-Puerto Rico Management Assocs., 52 F.3d 383
(lst Cir. 1995), we stated that "the rule in this circuit is that
a view does not itself constitute or generate evidence," id. at
386, reflecting the widely adopted position that a view is
permitted in the discretion of the trial judge "only to assist the
trier of fact in understanding and evaluating the evidence"
introduced in court, see 2 John W. Strong et al., McCormick on
Evidence 216, at 29 (5th ed. 1999). 
 On appeal, Gray argues that the language in Clemente was
dictum, and therefore not binding, and that, in any event, it is
illogical as well as incorrect by contemporary standards to exclude
a view from consideration as evidence. He argues that he is
entitled to a new trial because the view was integral to his
defense and the court's instruction unfairly prejudiced him. He
had attempted at trial to prove that he could not have been the
robber because a work-related leg injury left him physically
incapable of fleeing quickly along the uneven, hilly escape route
that the robber had followed. He maintains that the court's
instruction precluded him from relying on the jury's own
experiences with the difficult terrain to support his doctor's
testimony that he could not have covered the route as quickly as
the robber. 
 Our review of the relevant law and commentary now leads us to
conclude that it is unrealistic to exclude a view from the status
of evidence in every circumstance. We do not go further in this
opinion than to remove this blanket prohibition. But even if the
court's instruction on the view was error, it must be deemed
harmless because, as we shall explain, it foreclosed very little
benefit from the view that a permissive instruction would have
allowed, and because the testimonial evidence points so
overwhelmingly to the appellant's guilt.
 II. The Nature of the View
 Although our unconditional statement in Clemente that a jury
view "does not itself constitute or generate evidence" may
represent the majority position, see 52 F.3d at 386 & n.3, the
momentum appears to be headed in the opposite direction. Indeed,
most of the usual commentators on matters of evidence either
question the rationale for excluding views from evidentiary status,
observe that that position has lost favor, or both. See McCormick
on Evidence 216, at 29 (the "preferable" position is that a view
is "evidence like any other"); 22 Charles Alan Wright & Kenneth W.
Graham Jr., Federal Practice and Procedure 5176, at 141 (1978)
("The notion that a view is not 'evidence' has been discredited by
the writers, and explicitly rejected by one modern code.")
(citations omitted); 2 Joseph McLaughlin, ed., Weinstein's Federal
Evidence 403.07[4] (2d ed. 1999) ("[T]he modern position is that
the view does provide independent evidence."); 4 John Henry
Wigmore, Wigmore on Evidence 1168, at 391, 388 (1972) (referring
to the "unsound theory" that a view "does not involve the
consideration of evidence by the jury" and noting that "it has in
most jurisdictions been repudiated"). Cf. John M. Maguire, Cases
and Materials on Evidence 141 (1973) (noting that courts are
divided on the question but not taking a position).
 Given the invitation to look more closely than was necessary
in Clemente, we have found no reason to disagree with the experts. 
Perhaps the most compelling and pragmatic observation is that the
distinction between non-evidence that aids a jury's understanding
and traditional, independent evidence is "lost on a jury," see 2
Weinstein's Federal Evidence 403.07[4]. We agree that it is
unlikely that jurors, confronted with testimonial evidence at odds
with what they have seen, "will apply the metaphysical distinction
suggested and ignore the evidence of their own senses," McCormick
on Evidence 216, at 29. The Tenth Circuit has expressed a
similar thought:
 We acknowledge that jurisdictions vary as to whether a
 view is treated as evidence or simply as an aid to help
 the trier of fact understand the evidence. However, we
 believe such a distinction is only semantic, because any
 kind of presentation to the jury or the judge to help the
 fact finder determine what the truth is and assimilate
 and understand the evidence is itself evidence. The
 United States Supreme Court has stated that the
 "inevitable effect [of a view] is that of evidence no
 matter what label the judge may choose to give it." 
 Snyder v. Massachusetts, 291 U.S. 97, 121 (1934),
 overruled on other grounds . . . .

Lillie v. United States, 953 F.2d 1188, 1190 (10th Cir. 1992)
(footnote omitted); see also Wigmore on Evidence 1168, at 385-86
("The suggestion that, in a view or any other mode of inspection by
the jury, they are merely `enabled better to comprehend the
testimony,' and do not consult an additional source of knowledge,
is simply not correct in fact . . . ."); Carpenter v. Carpenter, 78
N.H. 440, 447, 101 A. 628, 631 (1917) (quoted in Maguire, at 141
n.3) ("If the object is black when seen by the jury it would be
absurd to expect them to find that it was white, in the absence of
evidence indicating that they had been imposed upon.").
 Moreover, the rationale for the distinction increasingly lacks
force as technology advances. The position that a view should not
be considered evidence appears to derive from a concern that the
"facts" gathered by the jury from an on-the-scene observation
cannot be made part of the record for purposes of appeal. See,
e.g., In re Application, 102 F.R.D. 521, 524 (E.D.N.Y. 1984)
(Weinstein, C.J.); McCormick on Evidence 216, at 29; 4 Wigmore on
Evidence 1168, at 381-82, 385; Thomas P. Hardman, "The
Evidentiary Effect of a View: Stare Decisis or Stare Dictis?" 53
W. Va. L. Rev. 103, 113 (1951) [hereinafter "Evidentiary Effect of
a View"]. A record of a view can be made, however, through the use
of video or other photographic equipment, as well as through
transcription of any remarks made. See In re Application, 102
F.R.D. at 524; H.D. Wendorf, "Some Views on Jury Views," 15 Baylor
L. Rev. 379, 384 (1963) [hereinafter "Jury Views"] ("Even conceding
the objection directed to a lack of record . . . , it can be
adequately answered by providing a summary of the view proceedings
in the record."). Although such a record may not capture every
nuance of the experience, that difficulty is equally applicable to
other kinds of evidence:
 A witness' countenance, tone of voice, mode and manner of
 expression, and general demeanor on the stand, oftentimes
 influence the jury as much in estimating the weight they
 give and attach to his testimony as the words he utters,
 and yet they cannot be sent up with the record.

Hart v. State, 15 Tex. App. 202, 228 (1883) (cited in "Jury Views,"
15 Baylor L. Rev. at 384); see also 4 Wigmore on Evidence 1168,
at 384-85 (quoting same case); "The Evidentiary Effect of a View," 
53 W. Va. Law Rev. at 113 (same).
 Precautions, of course, must be taken to minimize problems,
because jury supervision is more difficult outside the courtroom. 
See "Jury Views," 15 Baylor L. Rev. at 384-85. Certain of the
safeguards we outlined in Clemente respond to these concerns,
including the recommendation that the judge be present and that
limits be placed on the interaction between counsel, the subject of
the view, and the jurors. See 52 F.3d at 386; see also "Jury
Views," 15 Baylor L. Rev. at 394, 396 ("[P]roper judicial
administration demands the presence and supervision of the judge at
the view . . . and definitive instructions to refrain from
conversation and independent exploration should be given the jury
prior to a view."). Of obvious importance is the court's
responsibility to ensure that what transpires at the view is fully
and accurately recorded, most likely by a court reporter. See
Clemente, 52 F.3d at 386.
 We emphasize that, by recognizing that the information
obtained through a view may constitute independent evidence at
trial, we do not diminish the trial court's inherent power to
decide whether to allow a view at all. Determining if a view is
appropriate in a particular situation remains a matter committed to
the trial court's informed discretion. See Clemente, 52 F.3d at
386.
 Moreover, the fact that we now regard a view to be within the
category of admissible evidence not only endows a trial court with
the same discretion to control its admission that the court has in
dealing with all evidentiary matters, but also may in the future
require special techniques and practices as experience indicates. 
This opinion does not purport to resolve all issues that may arise
stemming from the status of a view as evidence; it simply removes
the concept of a view from the highly ambiguous state of being
something to consider but not evidence. Our holding thus increases
the range of admissible evidence but leaves intact the district
court's authority to refuse a view in particular cases, or to
exclude a view, or portions of it, from evidence when an on-the-
scene observation does not transpire as the court had anticipated.
 III. The View in this Case
 Although the district court in this case excluded the view
from evidence without considering whether it satisfied the standard
requirements of admissibility, its decision does not require
reversal of appellant's conviction, because any error
unquestionably was harmless. See United States v. Crochiere, 129
F.3d 233, 236 (lst Cir. 1997). As we explain below, Gray was able
to rely on other evidence to attempt to show his inability to
traverse the difficult terrain of the robber's getaway path and,
though the view was not treated as evidence, the jurors' exposure
to the scene presumably influenced their evaluation of what they
saw and heard in the courtroom. In addition, considerable evidence
pointed to appellant as the bank robber.
 A. Other evidence of the terrain. The government introduced
photographs of the railroad tracks and footpath area that had been
seen by the jury as part of the view. Although the court's
instruction limited defendant's formal use of the jurors' direct
exposure to the scene, their first-hand experiences obviously
informed their examination of the photographs. In reality, the
district court's directive that the jury could use the view as a
"context" for considering other evidence provided appellant with
nearly all he could have expected from using the view as direct
evidence. The jurors essentially were encouraged to bring to mind
what they had seen when reviewing evidence, including the
photographs, relating to the difficulty of the terrain. As we
acknowledged earlier in concluding that a view may constitute
evidence, the distinction between context and evidence is likely to
be lost on the jury in the ordinary case. See supra at 5-7. This
case seems well within that norm. 
 Defendant's assertion that the jurors' observations at the
scene were not captured equivalently by the photographs and other
trial evidence, while perhaps true, thus misses the point. Indeed,
defense counsel made multiple references to the view in guiding the
jury's recollection of the evidence, noting at one point that the
robber ran down the left side of the railroad right-of-way and
that, "[a]s you know from the view, that's the rougher side." At
another point, presumably seeking to discount the significance of
appellant's leg injury, counsel stated that the jury could find,
"based on your view of the path," that the robber might have been
seen limping because he twisted his ankle along the way. The
degree by which treatment of the view as evidence rather than
context would have strengthened appellant's case is thus minimal,
particularly in light of the substantial evidence of his guilt, to
which we now turn.
 B. Robbery evidence. 
 The evidence that appellant committed the bank robbery
included the testimony of eight witnesses who identified him in a
bank surveillance photograph, including his mother-in-law and
brother-in-law, the latter of whom called police to report that the
robber was Gray after seeing a televised picture of the suspect. 
Three longtime friends also were among those who identified him in
the surveillance photograph, and a bank employee, Sue Palmer,
testified that the robber was the same man with whom she had spoken
in the bank on June 2, 1998. Gray admitted in his testimony that
he was in the bank on that date.
 The circumstantial evidence included the blue hooded
sweatshirt found on the footpath near the railroad tracks, which
Gray's brother-in-law identified as resembling one belonging to
Gray. As noted earlier, witnesses reported that the robber had
worn such a garment. An FBI hair and fiber expert testified that
hairs found on the sweatshirt were consistent with samples taken
from Gray. The getaway vehicle was identified as white with
Florida license plates, and Gray drove a white Suzuki with Florida
plates. Both Gray and the robber were described as having a
distinctive Fu Manchu style mustache. Several witnesses said the
robber had a pronounced limp, and Gray's treating physician
acknowledged that Gray would exhibit a significant limp when
running. The day after the robbery, Gray paid $310 cash for a room
at a Boston hotel, even though he had been receiving welfare
assistance to pay for a motel room in New Hampshire for the two
weeks before the robbery. Finally, when Gray was arrested at a
Manchester, New Hampshire hotel a week after the robbery, a
newspaper clipping that named him as a suspect was found on the
night stand between the two beds in his room.
 In light of this considerable evidence linking appellant to
the crime, and the negligible effect of the court's instruction
that the view was not evidence, we conclude that any error in the
treatment of the view must be deemed harmless.
 The judgment of conviction is therefore affirmed.