Nelson **TORRES**, Jessica Torres and the Conjugal Partnership Composed by Them, Plaintiffs

v.

**KMART CORPORATION**, John Doe Insurance Company, Defendants

No. CIV.99–1072(SEC)(JA).

United States District Court, D. Puerto Rico.

Nov. 26, 2002.

Jose L. Ubarri–Garcia, Brown & Ubarri, San Juan, PR, for plaintiffs.

Marcos A. Ramirez–Lavandero, San Juan, PR, Pedro J. Perez–Nieves, University of Puerto Rico Central Admin. Legal Advisor Office, San Juan, PR, for defendants.

## OPINION AND ORDER

ARENAS, United States Magistrate Judge.

Plaintiff Nelson Torres, his wife Jessica Torres, and the conjugal partnership formed by them brought suit against Kmart Corporation ("Kmart") for the injuries sustained by Mr. Torres after he slipped and fell at one of the defendant's stores. After a jury trial, the jury found in favor of the plaintiff and awarded $1,400,000 to Mr. Torres and $200,000 to his wife. Kmart moves for judgment as a matter of law or for a new trial challenging the sufficiency of the evidence on the issue of liability. Defendant also requests a remittitur or alternatively a new trial, claiming that the award is excessive. In addition, the defendant avers a series of errors in the jury instructions as well as in the admission and exclusion of evidence which, according to defendant, also warrant the granting of a new trial. For the reasons expressed in this opinion, defendant's motion is DENIED.

## I. BACKGROUND

This diversity suit was brought by plaintiffs imputing negligence to Kmart and requesting damages under the provisions of Puerto Rico general tort law statute 31 P.R. Laws. Ann. § 5141. The relevant facts are as follows.

On August 18, 1998, plaintiff Nelson Torres and his wife visited the Big Kmart stored located at Trujillo Alto Plaza Mall in Trujillo Alto. After being at the store for about 45 minutes, Mr. Torres slipped and fell on water that was on the floor in one of the aisles. It was determined by the store's loss control manager—Mr. Felix Arévalo—that the water resulted from a leak in the roof of the store; it had been raining heavily that day. Mr. Torres sustained injuries as a result of the fall and on January 25, 1999 he filed a complaint against Kmart. (Docket No. 1.) Subsequently, plaintiffs moved for leave to amend their complaint, which the court granted on April 5, 2000. (Docket No. 44.) Plaintiffs filed their amended complaint on April 6, 2000 (Docket No. 45), and after discovery, a jury trial was held from July 23 through July 27, 2000. The jury found for the plaintiffs and judgment was entered in their favor in the amounts of $1,400,000 for Mr. Torres and $200,000 for his wife Mrs. Torres. (Docket No. 112.)

This matter is before the court on Kmart's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, or in the alternative for a new trial under Federal Rule of Civil Procedure 59. (Docket No. 116.) First, Kmart claims that the plaintiffs failed to present sufficient evidence on the issue of negligence; thus it requests that the verdict be set aside and judgment as a matter of law be entered in its favor. Alternative-

ly, it is argued by the defendant that the verdict is against the clear weight of the evidence, therefore they are entitled to a new trial. Second, Kmart requests a remittitur of the damages award or a new trial on this issue, challenging said award as excessive. Finally, Kmart contends that a new trial is warranted, claiming that a number of errors regarding jury instructions and the admission and exclusion of evidence were committed. Plaintiffs filed their opposition to defendant's motion on September 12, 2001 (Docket No. 125), to which Kmart replied on October 24, 2001. (Docket No. 132.) I analyze the issues raised by defendant's motion in the order they are presented.

## II. ANALYSIS

### A. Defendant's Motion for Judgment as a Matter of Law or New Trial

1. *Standard*

■ In reviewing defendant's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b),[1] I begin my analysis with bedrock principles. A verdict should only be set aside if the evidence at trial was so strongly and overwhelmingly inconsistent with the verdict that no reasonable jury could have returned it. *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 393 (1st Cir.2002). It has also been stated that "[o]nce a jury returns a verdict, a 'heavy burden' is placed on one who challenges it." *White v. New Hampshire Dep't of Corr.*, 221 F.3d 254, 259 (1st Cir.2000). A verdict must be upheld unless the evidence presented supports only one conclusion; that the verdict cannot stand. *See Walton v. Nalco Chem. Co.*, 272 F.3d 13, 18 (1st Cir.2001). When re-

viewing the evidence, all inferences must be drawn in favor of the nonmoving party. *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 75 (1st Cir.2001).

■ A new trial, on the other hand, should be granted and the verdict set aside if the trial judge "is of the opinion that the verdict is against the clear weight of the evidence," and that a miscarriage of justice will occur if the verdict is allowed to stand. *Sheils Title Co. v. Commonwealth Land Title Ins. Co.*, 184 F.3d 10, 19 (1st Cir. 1999).

2. *Puerto Rico Law on Premises Liability*

■ In determining whether the verdict in the instant case is supported by the evidence presented at trial, a survey of Puerto Rico law on premises liability must be performed. Article 1802 of the Puerto Rico Civil Code, which is codified in 31 P.R. Laws Ann. § 5141, provides the general rule for liability in torts. Section 5141 states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Although section 5141 does not define fault or negligence, the Puerto Rico Supreme Court have developed the limits of liability under article 1802 through caselaw. *See Mas v. United States*, 984 F.2d 527, 528 (1st Cir.1993). It has been held that a person is liable under article 1802 if three basic elements concur: (1) the presence of a physical or emotional damage; (2) that the damage arose as a consequence of a negligent or intentional act or omission of the defendant; and (3) that there is a

---

1. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. Fed.R.Civ.P. 50(b).

causal nexus between the damage suffered and said act or omission. *Cintrón–Adorno v. Gómez*, 147 D.P.R. 576, 598–99 (1999). The duty of foreseeability is the central criteria for the imposition of liability in torts. *Colón–González v. Tienda KMart*, 2001 TSPR 95 (Jun. 26, 2001). On the other hand, negligence for omission arises for not anticipating such damage that a reasonable, prudent person would rationally foresee if the duty was not fulfilled. *Id.* Otherwise, absolute liability would be imposed, because a person would be obligated to anticipate every possible risk that could conceivably arise in a multiplicity of situations. *See id.*

■■■ When it comes to business establishments, the general rule is that although a business owner is not the absolute insurer of the safety of its patrons, the business owner has a duty to keep said establishment in a safe condition so that the clients do not suffer harm or damage. *See Cotto v. Consolidated Mut. Ins. Co.*, 116 D.P.R. 644, 650 (1985). However, liability is only imposed in situations that involve risky conditions inside the business premises that the owner knew or should have known existed. *Id.* In other words, a plaintiff must prove that the defendant had actual or constructive knowledge of the dangerous condition that most likely than not caused the damage. *Colón–González v. Tienda KMart*, 2001 TSPR 95; *see also Mas v. United States*, 984 F.2d at 530; *Clemente v. Carnicon–Puerto Rico Mgmt. Assoc., L.C.*, 52 F.3d 383, 389 (1st Cir. 1995). As such, the question before the court in this case is whether the plaintiffs presented sufficient evidence to satisfy their burden that a dangerous condition existed on the premises and that said dangerous condition was known or should have been known by defendant.

3. *Application*

■■■ Defendant does not allege—because they cannot reasonably argue—that the water on the floor where Mr. Torres fell was not a dangerous condition. However, it claims that no evidence whatsoever was presented "that could lead a reasonable fact finder to conclude that Kmart knew or should have known that the water on the floor existed." (Docket No. 116, at 8.) Defendant further claims that there was no evidence from any circumstance from which it could be inferred that Kmart knew of the leaks in the roof. (Docket No. 116, at 11.) Finally, it is argued by defendant that plaintiff had to establish that the dangerous condition remained unattended because defendant negligently failed to detect it on time. Plaintiff, on the other hand, argues that the evidence presented at trial established that the defendant knew or should have known about the leaky roof. (Docket No. 125, at 9.) Moreover, plaintiff argues that, at the very least, "it was foreseeable that the hazardous condition that caused Torres' accident would go undetected as it did because of the size of the store and its understaffing [sic]." (Docket No. 125, at 9.)

From a review of the evidence, I find that sufficient evidence was presented at trial to establish defendant's liability. More specifically, there was enough evidence presented to enable the jury in this case to make a finding that a dangerous condition existed and that at the very least, the defendant should have known of its existence. The following evidence supports this conclusion:

On the night of the accident, the Big Kmart store at the Trujillo Alto Plaza had only twenty employees, despite the fact that the store has 84,180 square feet and that the accident occurred in the middle of the back-to-school shopping season. In fact, the evidence established that the

store was full that night. Evidence established that Mr. Torres and his wife encountered rain on the way to the store and that they had been in the store for about 45 minutes prior to Mr. Torres' fall. Félix Arévalo, the loss control associate on duty that night, testified that he was in charge of store security, customer security and customer safety. Mr. Arévalo's testimony established that the water on the floor leaked from the roof of the store. Moreover, his testimony was particularly important when he stated that although he did not know if there was a safety program for customers at Kmart, all employees had a *duty* to look out for liquids on the floor, put warning signs, block the area and clean the floor.

From this evidence, a reasonable jury could have found that knowledge of the existence of a hazardous condition was imputable to the defendant. *See Cotto v. Consolidated Mut. Ins. Co.*, 116 D.P.R. at 650. The fact that plaintiff had encounter rain on the way to the store and that he had been there for at least 45 minutes without seeing a single Kmart employee, creates an inference that defendant allowed a dangerous condition to remain undetected for an unreasonable period of time. Such inference is further supported because even Mr. Arévalo does not remember being to the area despite the fact that he had been working since 4:00 p.m. or 4:30 p.m. and that he walks through the store every 15 to 20 minutes. When Kmart employees failed to detect the water on the floor, notwithstanding their admitted duty to do so, Kmart incurred in negligence by omission for not anticipating a damage that could have foreseeably been caused by water or any other fluid for that matter. *See Colón–González v. Tienda KMart*, 2001 TSPR 95. In other words, even if the fall had been caused by a liquid spilled on the floor other than the water coming from the leaky roof, defendant would still be liable for not detecting such dangerous condition.

Viewing the evidence in light most favorable to the non-moving party, I find that the jury could have reasonably found in favor of plaintiff on the issue of negligence. Therefore, the verdict in this case will not be disturbed.

By the same analysis, defendant's motion for new trial must necessarily fail. It has been stated that:

> when an argument that the evidence was insufficient forms the basis of a motion for a new trial, the district court is generally well within the bounds of its discretion in denying the motion using the same reasoning as in its denial of a motion for judgment as a matter of law.

*Lama v. Borras,* 16 F.3d 473, 477 (1st Cir.1994). In other words, a finding of sufficient evidence in the context of a Rule 50 motion should also support the denial of a motion for new trial that challenges the verdict as against the clear weight of the evidence. Thus in view of the above, defendant's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) or alternatively for a new trial is DENIED.

**B. Defendant's Motion for Remittitur**

Next is defendant's contention that the verdict in the instant case should be subject to remittitur or in the alternative to a new trial on the issue of damages. Kmart challenges the award in this case as "exaggeratedly high, monstrously excessive, unreasonable, contrary to the evidence, lacking any rational basis and/or shocking to the conscience of the court." (Docket No. 116, at 16.) Furthermore, Kmart contends that the pronouncements of the Supreme Court in *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), require the application Puerto Rico law in reviewing the damages

award, and that such application mandates remittitur in this case. Plaintiffs argue on the other hand, that First Circuit caselaw supports their position that the jury award in this case should not be disturbed, and further that the *Gasperini* doctrine has been deemed not applicable to this type of case. (*See* Docket No. 125, at 10.)

### 1. *Standard*

A review of a damage award must focus on the evidence presented at trial and the court should not overturn a jury award that has substantial basis in the evidence. *See Havinga v. Crowly Towing & Transp. Co.*, 24 F.3d 1480, 1488 (1st Cir.1994). A jury award should not be disturbed only because "it is extremely generous or because ... [the court] think[s] [that] the damages are considerably less...." *Diefenbach v. Sheridan Transp.*, 229 F.3d 27, 32 (1st Cir.2000) (quoting *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 34 (1st Cir.), *cert. denied*, 528 U.S. 1021, 120 S.Ct. 532, 145 L.Ed.2d 412 (1999)). In other words, an award of damages would only be set aside "if it is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law." *Id.* So it has been held that a defendant challenging an award of damages bears a heavy burden of showing that the award is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." *Koster v. Trans World Airlines, Inc.*, 181 F.3d at 34 (quoting *Havinga v. Crowley Towing & Transp. Co.*, 24 F.3d at 1484).

However, before beginning the analysis under the above-stated standard, defendant's contention that the court must apply the doctrine set forth in *Gasperini v.*

*Center for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), must be addressed. The Supreme Court in *Gasperini* stated that in cases brought under diversity jurisdiction, an award of damages must be reviewed for excessiveness applying state substantive law. *See id.* at 430–31, 116 S.Ct. 2211. The Court further noted that a recovery of damages which is significantly larger than the recovery it would have been tolerated in state court is precluded by the *Erie* doctrine.[2] *Id.* at 431, 116 S.Ct. 2211. Thus under this principle, Kmart claims that the standard under which the instant jury award should be reviewed is the approach taken by the Supreme Court of Puerto Rico. Defendant contends that damages awards under Puerto Rico law are reviewed using as guidelines the amounts awarded in similar and comparable cases. *See Velázquez–Ortiz v. Universidad de Puerto Rico*, 128 D.P.R. 234, 236 (1991).

This argument has, however, been rejected by the First Circuit. In *Grajales–Romero v. American Airlines, Inc.*, 194 F.3d 288, 300 (1st Cir.1999), the court stated that if Puerto Rico law placed a substantive cap on damages, then Puerto Rico law would control the analysis. But based on the court's reading of Puerto Rico law, the cases do not suggest a " 'departure from [the] ordinary practice' of reviewing awards under the federal standard for judging excessiveness." *Grajales–Romero v. American Airlines, Inc.*, 194 F.3d at 300 (quoting *Mejías–Quirós v. Maxxam Property Corp.*, 108 F.3d 425, 427 n. 1 (1st Cir.1997)). In other words, the standard outlined above regarding review of damages awards in the First Circuit controls. *See Grajales–Romero v. American Airlines, Inc.*, 194 F.3d at 300. Therefore,

---

**2.** *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that substantive law of the state must be applied, ex- cept in cases governed by the Federal Constitution or by Acts of Congress).

the question in this case is whether under said standard, the jury award in this case should stand.

## 2. *Application*

Although extremely generous, the jury award in this case is not on its face so grossly excessive or inordinate as to shock the court's conscience. Examining the evidence in the light most favorable to the challenged award, I find that the verdict should not be disturbed for it is amply supported by the evidence presented at trial. The following is a summary of the pertinent evidence that supports such conclusion.

At trial evidence was presented describing Mr. Torres' condition following the accident. Testimony provided a diagnosis of, *inter alia,* cervico-thoracic sprain, muscle spasms and cervical and lumbar strains. A subsequent MRI (Magnetic Resonance Imaging) also revealed a right paracentral disc herniation. Testimony was presented as to the range of Mr. Torres' limitation in cervical and lumbar movement. Some numbness or decreased sensation in his forearm was also experienced. The testimony of Dr. Boris Rojas described Mr. Torres' limitation in lifting, bending, pushing and carrying. He cannot remain seated or standing for long periods of time. The evidence established that although not precluded from these activities, Mr. Torres should abstain from them to avoid pain and aggravation. Mr. Torres should also refrain from playing high impact sports. In addition, it is undisputed that Mr. Torres is in, and will continue to experience a lot of pain for the rest of his life.

As to plaintiffs' proof of mental anguish or suffering, the evidence at trial established that Mr. Torres is concerned that he may not eventually perform his job, which in turn creates concern in him about his future and that of his family. He has become frustrated and angry because as a result of his condition he feels much older than his actual age and because he is unable to help with domestic chores and to get involved in his children's activities. With respect to Mrs. Torres, the evidence established that she is also frustrated because now she has a greater burden in terms of her family responsibilities. She testified that she is concerned about the future in light of her husband's condition and that he is not the man he used to be. Particularly frustrating for both of them is the fact that since the accident, they have not been able to enjoy the same intimate life.

Moreover, Dr. Rodríguez–Ramón, one of the experts that testified at trial, originally concluded that Mr. Torres suffered a 23% physical impairment. Dr. Boris Rojas on the other hand regarded Mr. Torres as having an 18% physical impairment. Dr. Luis Faura–Clavell also examined Mr. Torres, however his testimony was not presented at trial. He concluded that Mr. Torres had a 16% physical impairment. Notwithstanding the fact that among the three physicians the percentage of physical impairment ranges between 16% and 23%, one fact is undisputed: that the impairment is permanent. Furthermore, the jury could have easily credited Dr. Rodríguez's assessment of 23% physical impairment.

Finally, it is true—as Kmart correctly points out—that Mr. Torres was never hospitalized or required surgery. It is also true that no prolonged absences have been evidenced in Mr. Torres' work record. Notwithstanding this, I find that the award of damages in this case is supported by the evidence at trial and must be allowed to stand, especially when it has been noted that a jury's judgment "is given wide latitude and will be upheld so long as it does not exceed some 'rational appraisal or estimate of the damages that

could be based on the evidence before the jury.'" *Monroig v. RMM Records & Video Corp.,* 196 F.R.D. 214, 220 (D.P.R.2000) (quoting *Blinzler v. Marriott Int'l Inc.,* 81 F.3d 1148, 1161 (1st Cir.1996)). In this case there was sufficient evidence as to non-economic injury such as pain and suffering, loss of consortium, mental anguish, etc. More specifically, it can be reasonably inferred that the majority of the award was reserved by the jury for these types of non-economic damages, insofar as plaintiff suffered little or no specific economic loss in the form of loss wages and/or medical expenses. As such, the damage award in this case must be upheld because as it has been held: "[t]ransmitting legal damages into money damages is a matter 'peculiarly within the jury's ken,' especially in cases involving intangible, non-economic losses." *Smith v. Kmart Corp.,* 177 F.3d 19, 30 (1st Cir.1999) (quoting *Wagenmann v. Adams,* 829 F.2d 196, 215 (1st Cir. 1987)). In view of the foregoing, the jury's award of damages in this case will not be disturbed. Therefore, defendants motion for remittitur or in the alternative for a new trial on the issue of damages is DENIED.

### C. Defendant's Remaining Claims

Kmart's final attempt challenging the verdict in this case is comprised of a number of claims of errors allegedly committed by the trial court in the jury instructions, as well as in the exclusion and admission of evidence. Said errors, Kmart asserts, warrant the grant of a new trial.

### 1. *Jury Instruction on Damages*

Defendants first claim of error is that the court failed to instruct the jury regarding a question they had as to the computation of damages. On July 27, 2001, after the jury had been sent for deliberation, the foreperson wrote the following note: "Your honor: We the jury would like to know if the plaintiff's [sic] lawyer use [sic] any parameter, either minimum or maximum, to determine the amount of money they are claiming or if they are allowed to ask any amount for claiming [sic]." (Docket No. 108.) In response to the inquiry, the court informed the jury that they had to determine damages in accordance with the instruction previously given. The instruction reads as follows:

> Under Puerto Rico law, if you find that defendant acted negligently and caused damages to plaintiffs, you may award each plaintiff, separately, compensatory damages. You may award compensatory damages only for injuries that each plaintiff *has proven* were caused by the defendant's alleged wrongful conduct.

> No evidence of monetary value of such intangible things as pain and suffering need to be introduced into evidence. There is not an exact standard for compensation to be awarded for these elements of damages. Any award you make should be *fair in light of the evidence presented at trial.*

> In determining the amount of damages that you decide to award, you should be guided by an objective and dispassionate common sense. You must use your sound discretion in fixing an award to damages, drawing all reasonable inferences *from the facts presented in evidence during trial.*

> You cannot award compensatory damages on any sympathy to the plaintiffs, speculation or guess work. On the other hand, the law does not require that each plaintiff prove the amount of his/her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

(Docket No. 109) (emphasis added).

Kmart claims that by not particularly addressing the jury's question, they were

prejudiced because the jury did not understand that they were not bound to award the amount asked for in the complaint. Kmart further claims that the jury did not follow the instruction because they rendered a verdict that is against the clear weight of the evidence. I do not agree. Even the most cursory reading of the instruction leads to one conclusion: that the instruction explains in great detail how damages should be calculated. The court understood necessary that the jury confine themselves to the contours of such detailed instruction. Moreover, the requirement being that the computation of damages be based on the evidence presented at trial, the jury instruction is more than sufficient to establish such obligation. In addition, as stated in the previous section of this opinion, the award of damages was supported by the evidence; thus the instruction needed no supplemental explanation. Finally, it is noteworthy that had the jury not followed the instruction, it might have awarded $4,410,000, the amount actually prayed for in the amended complaint. (*See* Docket No. 44.)

## 2. *Remaining Jury Instructions*

Kmart contends that the court erred in failing to give the following instruction: "There is no duty to protect the visitor from risks that are known or that are so apparent that it can be reasonably expected that he can discover then [sic] and protect himself." (Docket No. 116, at 38.); see *Goose v. Hilton Hotels Int'l, Inc.,* 79 D.P.R. 523 (1956). Defendant similarly claims that the court erred in not giving its proposed jury instructions on pre-existing conditions and mitigation of damages. The first of these instructions requested that the jury be instructed that if Mr. Torres' pain was caused by "any other physical" condition, that they had to find for the defendant. Kmart further requested that the jury be instructed to consider such pre-existing condition in the computa-

tion of damages. The other request made by defendant was that the jury be instructed on whether the defendant failed to mitigate his damages.

 It has been noted that to determine if a failure to give a proffered instruction is error depends on whether the instructions given adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues of the case. *Sullivan v. National Football League,* 34 F.3d 1091, 1106–07 (1st Cir.1994), *cert. denied,* 513 U.S. 1190, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995). The question is whether the instructions taken as a whole gave adequate guidance on the elements of the case to insure that the jury understood the issues. *Id.* (citing *Los Angeles Mem'l Coliseum Comm'n. v. National Football League,* 726 F.2d 1381, 1398 (9th Cir.1984)). A party's entitlement that its legal theories on controlling issues be presented to the jury depends on whether such theories are supported by the law and the evidence presented at trial. *Febres v. Challenger Caribbean Corp.,* 214 F.3d 57, 62 (1st Cir.2000).

 First, I find that the instruction on apparent risk was not necessary. When the court instructed the jury on premises liability, the jury was charged in relevant part as follows: "If there is a danger attending the customer's use of the premises and *such danger arises from conditions not readily apparent to the senses of the ordinary person* [.]" (Docket No. 109) (emphasis added). As it can be noted, defendant's proffered instruction on this issue would have been a duplicate of the instruction given. To be sure, it has been held that "[a] trial court is obliged to inform the jury about the applicable law, but, within wide limits, the method and manner in which the judge carries out this obligation is left to his or her discretion." *Elliott v. S.D. Warren Co.,* 134 F.3d 1, 6

(1st Cir.1998). Similarly, I find that defendant's proposed instruction on mitigation of damages and pre-existing conditions were either not supported by the evidence or the law and/or already covered by the instructions given. More specifically, the instruction on mitigation of damages was not supported by the evidence because there was no dispute as to whether Mr. Torres failed to act reasonably in minimizing his damages. In addition, the proffered instruction on Mr. Torres' pre-existing condition was waived by the defendant by failing to raise it in both its answers to complaint and the amendment complaint. Kmart also waived such argument by failing to include it in the case's pretrial order. *See Correa v. Hospital San Francisco,* 69 F.3d 1184, 1195 (1st Cir.1995), *cert. denied,* 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996).

### 3. *Exclusion of the MRI Results*

 Kmart's next claim of error is that the exclusion of the MRI results that defendant attempted to move into evidence prejudiced the defendant to an extent that a new trial is required. Said item of evidence was excluded by the court because Kmart failed to announce that it planned to use it despite the fact that it had ample time to do so. The MRI results were also excluded because it was not used for impeachment purposes. The court reaffirms its ruling based on this reasoning. Therefore this issue needs not be discussed further.

### 4. *Exclusion of Dr. Víctor Mojica's Expert Testimony*

Kmart's final argument in support of its motion for a new trial relates to the court's exclusion if its proposed expert witness, Dr. Víctor Mojica. The defendant argues that the court erred in excluding the testimony because such exclusion "prevented defendant from evidencing before the jury that expert opinion on the impairment suffered by Torres as a consequence of his fall was not uniform or unchallenged and prevented the jury from having for its consideration a reliable and relevant opinion that diverged from the rest." (Docket No. 116, at 42.)

At trial, plaintiffs moved to exclude Dr. Mojica arguing that Kmart had failed to raise as an affirmative defense in its answer to the complaint and to the amended complaint, as well as in its theory in the pretrial order, that Nelson Torres had a pre-existing condition. In plaintiffs' view, this constituted an unfair surprise. Plaintiffs also contended that Dr. Mojica ought to be excluded because his opinion had no sound scientific basis and it failed to adhere to the Guides to the Evaluation of Medical Impairments. Plaintiffs also challenged Dr. Mojica's testimony under the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). A *Daubert* hearing was held and, at its conclusion, the court decided to exclude Dr. Mojica's testimony pursuant to the holdings in *Daubert, Kumho* and their progeny. The court agreed that the testimony of Dr. Mojica had to be excluded on the two alternative grounds advanced by plaintiffs. The court's opinion regarding this particular issue remains unchanged.

 As to waiver of the pre-existing condition defense, it has been stated that forfeiture is generally the penalty for failure to raise an affirmative defense in the pleadings. In *Williams v. Ashland Eng'g Co.,* 45 F.3d 588, 593 (1st Cir.), *cert. denied,* 516 U.S. 807, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995), the First Circuit explained that "[g]enerally speaking, a party must set forth all affirmative defenses in the pleadings, on pain of possible forfeiture.... [A] defendant who fails to assert

an affirmative defense at all, or who asserts it in a largely uninformative way, acts at his peril." *See also* Fed.R.Civ.P. 8(c). A review of the record reveals that nowhere in the pleadings was the defense of pre-existing condition advanced. It was not until the time that Dr. Mojica was proposed as expert that said defense was mentioned and this occurred at a stage where the case had substantially developed.

■ Additionally, the pre-trial order made no mention of the defense either. Such failure also required that defendant be precluded from arguing the defense after being raised for the first time at such advanced stage in the case. It has been held that pre-trial conferences under Federal Rule of Civil Procedure 16 are designed to assist the trial judge in the formulation of the issues, including eliminating frivolous claims or defenses. *Correa v. Hospital San Francisco*, 69 F.3d at 1195. Thus, if pre-trial orders are to achieve their intended purpose, the litigants must take them seriously. *Id.* Like in *Correa*, where the court held that the new theory espoused was forfeited after the party had neglected to raise it throughout the case, the pre-existing condition theory of defense raised by Kmart through the expert testimony of Dr. Mojica was also forfeited, especially in light of the prejudice it would had caused to the plaintiffs. *See also Ramos v. Davis & Geck Inc.*, 968 F.Supp. 765, 771 (D.P.R.1997), *aff'd*, 167 F.3d 727 (1st Cir.1999).

■ Furthermore, the testimony of Dr. Mojica was also excluded when plaintiffs challenged the scientific basis of his approach to determine Mr. Torres' impairment under the AMA Guides to the Evaluation of Permanent Impairment. After a hearing, I concluded that under the pronouncements of *Daubert, Kumho* and their progeny, Dr. Mojica's opinion lacked scientific basis, was unsupported by the facts

and would not have assisted the jury. Therefore, it was inadmissible pursuant to Federal Rule of Evidence 702, as amended. The following reasons support said conclusion, as well as the conclusion that defendant's motion for a new trial must be denied on these grounds.

The challenge to Dr. Mojica's opinion was as to the method used by him to assess Mr. Torres' degree of impairment under the AMA Guides. All the experts that evaluated Mr. Torres used the Range of Motion Model (ROM) described in the 4th edition of the Guides. Dr. Mojica on the other hand used the 5th edition of the Guides and determined the level of impairment using the Diagnostic Relative Estimate Model (DRE). Based on said approach, he regarded Mr. Torres as having a substantially lower percentage of physical impairment. Particularly troubling for the court was the fact that Dr. Mojica attempted to support such conclusion by placing Mr. Torres between two categories—categories II and III—of the DRE impairment categories. No such "in between" category exists under the Guides and nowhere in the Procedures and Directions of the Guides is it suggested that an examiner is free to create an intermediate category. As gatekeeper, I note that Dr. Mojica, admittedly a respected specialist, did not apply reliable principles and methods to the facts or data he was presented with. This resulted in a clear violation of Rule 702, as amended.

■ Based on this, it was determined by me that Dr. Mojica's testimony was neither reliable nor likely to assist the trier of fact in understanding or determining a fact in issue. *See Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 80–81 (1st Cir.1998) (citing *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. at 591–92, 113 S.Ct. 2786). The gatekeeper function established by *Daubert*

vests a trial judge with "broad discretion in determining the admissibility of expert testimony." *United States v. Montas,* 41 F.3d 775, 783 (1st Cir.1994), *cert. denied,* 514 U.S. 1121, 115 S.Ct. 1986, 131 L.Ed.2d 873 (1995). Consequently, the testimony of Dr. Mojica was excluded.

## III. CONCLUSION

For the reasons outlined in this opinion, defendant's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 or in the alternative for a new trial under Federal Rule of Civil Procedure 59 is DENIED. Defendant's motion for remittitur or in the alternative for a new trial on the issue of damages is similarly DENIED. Defendant's motion for a new trial on its remaining claims of error is also DENIED.