# United States Court of Appeals
## For the First Circuit

No. 04-1154

ENRIQUE ACEVEDO-FELICIANO, ET AL.,

Plaintiffs, Appellants,

v.

MIGUEL A. RUIZ-HERNÁNDEZ, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya and Lynch, Circuit Judges.

Claudio Aliff Ortiz, with whom Pablo Landrau Pirazzi and
Aldarondo & López Bras were on brief, for appellants.
Jorge Martínez-Luciano, with whom Gina Ismalia Gutiérrez-
Galang, Law Offices Pedro Ortiz Alvarez, Alfredo Acevedo-Cruz,
and Civil Rights Legal Task Force were on brief, for appellees.

May 11, 2006

**LYNCH**, **Circuit Judge**.  Plaintiffs and appellants are twenty-two former temporary employees of the Municipality of Aguada, Puerto Rico.  Each held a contract stating that the term of employment was effective through June 30, 2001, but also stating that the employment was "by way" of a particular financial grant (a "Law 52" grant, explained further below) that the Municipality had received from the Commonwealth.  Funding under that grant was exhausted on December 31, 2000, and the Municipality, under a new Mayor, terminated plaintiffs' contracts one month later on the basis of lack of Law 52 funding.

Plaintiffs sued the Municipality and individual municipal officers (in their official and personal capacities) under 28 U.S.C. § 1983 on two federal claims and related state claims.  They alleged that the termination of their contracts before the expiration dates, without a pretermination hearing, violated their procedural due process rights under the U. S. Constitution.  They also alleged that their contracts were terminated because they belonged to a different political party, the New Progressive Party (NPP), than the newly elected Popular Democratic Party (PDP) mayor of the Municipality in violation of the First Amendment. Plaintiffs sought injunctive and declaratory relief, back pay, front pay, economic and punitive damages, pre- and post-judgment interest, and other relief.

At trial on June 16, 2003, after the close of plaintiffs' evidence, the district court granted judgment under Rule 50, Fed. R. Civ. P., for defendants on the procedural due process claim. The court held that the plaintiffs had no property interest in further employment inasmuch as the program in which they were employed depended upon receipt of the Law 52 funding from the Commonwealth which had expired on December 31, 2000. The jury considered the First Amendment claim and returned a verdict for defendants.

On appeal, the plaintiffs challenge both the Rule 50 procedural due process ruling and the denial of a motion for mistrial based on a nearly three-month delay in the middle of the trial proceedings. They do not challenge the jury verdict. As to the denial of the motion for mistrial, we find no abuse of discretion and affirm. As to the procedural due process claim, however, we vacate and remand for further consideration.

I.

The Commonwealth established the Law 52 program more than twenty-five years ago. Under the program, see P.R. Laws Ann. tit. 29, § 711c, Puerto Rico "subsidize[s] locally managed programs to ameliorate unemployment." Gomez v. Rivera Rodriguez, 344 F.3d 103, 107 (1st Cir. 2003). Municipalities do not have an automatic entitlement to Law 52 grants: a municipality must submit a proposal describing how it will use the money; such proposals must be

approved by the Commonwealth's Department of Labor and Human Resources (DLHR). Id. Once a grant is approved, the Commonwealth and the municipality sign a contract specifying how much money the municipality will receive, over what term, and how many jobs it will subsidize. The various Law 52 contracts between the Municipality of Aguada and the DLHR contained standard clauses stating that the Municipality "commit[ted] itself to create" the number of jobs specified, and that "[u]nder no circumstances will it be construed that people hired [by virtue of the Law 52 contract] are or act as employees of the [DLHR]."

On July 1, 2000, a new Law 52 agreement ("the Law 52 contract") between the Municipality and the DLHR took effect. Under the contract's provisions, the DLHR awarded the Municipality $295,908 to pay the salaries and benefits of the forty-five employees through December 31, 2000. The Law 52 contract required the Municipality to keep the Law 52 funds separate from other municipal funds.

The plaintiffs are among the forty-five workers hired by the Municipality in connection with this Law 52 grant. Between June 20 and September 1, 2000, each of the plaintiffs received letters ("the hiring letters") signed by then-Mayor Julio César Román, appointing them to various municipal jobs, including carpentry and labor positions. The stated starting dates for these

jobs ranged from July 1 to September 6, 2000.  The stated termination date for each job was the same: June 30, 2001.

Mayor Román was a member of the NPP, as is each of the plaintiffs.  It is noteworthy that the Mayor's letter used an employment date for the plaintiffs through June 2001, despite the fact the Law 52 funding lasted only through December 2000, and that he did so in the face of an upcoming municipal election in which control of the municipal government might switch to the opposing political party.  Defendants rely on this to argue that the Mayor acted ultra vires in using a termination date of June 30.

The hiring letters signed by Mayor Román varied only slightly in their terms.  A typical letter, such as the one sent to plaintiff José Méndez Valle, stated:

> Allow me by these means [to] appoint you to hold the post of Laborer by way of the Labor Department Proposal[1] for this Municipal Administration.
>
> The same shall be effective September 6, 2000 until June 30, 2001.  You shall earn a monthly salary of $837.00.

As of the autumn of 2000, then, the twenty-two plaintiffs were all employed by the Municipality and receiving salaries paid out of Law 52 funds.  On November 7, 2000, elections were held in Aguada, and a new mayor, defendant Miguel Ruiz-Hernández of the

---

[1] It is clear that "the Labor Department Proposal" is a reference to the Municipality's request for Law 52 funding from the DLHR.

-5-

PDP, was elected.  The twenty-two plaintiffs had supported the new Mayor's opponent in the mayoral race.[2]

Mayor Ruiz-Hernández was sworn into office on January 9, 2001.  By this time, the funding provided by the Law 52 contract had expired.  The Municipality nonetheless continued plaintiffs' employment through the month of January, paying their salaries out of municipal funds.  On January 31, however, Mayor Ruiz-Hernández sent letters to the plaintiffs ("the firing letters") informing them that the Law 52 funds had expired a month earlier and that their jobs were therefore being terminated.  A typical firing letter, this one addressed to plaintiff Edwin Acevedo Acevedo, read as follows:

> I hereby inform you that your work contract through the Proposal of the Department of Labor and Human Resources (Law 52) expired on December 31, 2000.  The previous administration failed in not informing you that your contract expired and that your functions ceased on the aforementioned date.
>
> We do not have the funds that the Department of Labor and Human Resources provided for these contracts.  That is why we have to dispense with your services.  We regret the inconveniences this may cause you.

All of the plaintiffs' jobs were terminated on January 31; none of the plaintiffs were granted a pre-termination hearing, although

---

[2] The opponent was not Mayor Román; he had not run for reelection.

each had notice (via the firing letters) that the stated reason for termination was the expiration of Law 52 funding.

On February 12, 2001, less than two weeks later, the Municipality and the DLHR entered into a new Law 52 contract, which provided funding for forty positions from February 16 through June 30, 2001. None of the plaintiffs were offered any of the jobs created by these funds, despite the fact that defendant Glenda Peña-Muñoz, the new municipal human resources director appointed by Mayor Ruiz-Hernández, had promised them they would be recalled when new Law 52 funds were procured.

The plaintiffs filed suit on April 12, 2001, against the Municipality, Mayor Ruiz-Hernández, and Human Resources Director Peña-Muñoz.[3] In response to plaintiffs' political discrimination claim, defendants countered that the terminations had nothing to do with political animus, but were instead inevitable and proper given the cessation of Law 52 funding. And as to the procedural due process claim, defendants argued that Mayor Román had had no authority to offer the plaintiffs contracts that outlasted the Law 52 funding; thus the contracts were void as to a June 30

---

[3] Plaintiffs also sued municipal Director of Public Works Aníbal Mendoza, but the district court dismissed Mendoza from the case prior to the verdict, and plaintiffs do not appeal as to him. The defendants filed a third-party complaint against former Mayor Román; this complaint likewise was dismissed by the district court, and Mayor Román is not a party on appeal.

termination date, and no pre-termination hearing was required under the Due Process Clause.[4]

Jury trial began on March 19, 2003. On April 4, plaintiffs rested. Defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) as to the political discrimination and procedural due process claims. On June 16, 2003, during an extended hiatus in the trial (discussed further below), the district court entered judgment for the defendants on the procedural due process claim but allowed the political discrimination claim to proceed. Trial resumed on July 1 on the plaintiffs' remaining claims and the jury rejected the political discrimination claim on July 18.[5]

---

[4] Defendants also argued, in the district court and on appeal, that some of the Municipality's Law 52 employees had not just a hiring letter in their personnel files, but also a second letter from Mayor Román, identical to the first except for the fact that it stated a term of employment through December 31, 2000. Defendants imply that Mayor Román knew he had to shorten plaintiffs' terms of employment, that he took steps to do so, but that he reversed course after his party lost the election, either by removing the second letter from the plaintiffs' files or by inserting a third letter with identical terms to the first. Defendants point to a smattering of evidence in the record that lends support to this idea. The district court did not mention this evidence in granting judgment on the due process claims.

[5] As to the negligence issue, the jury found for the plaintiffs only against the Municipality itself, not defendants Mayor Ruiz-Hernández and Peña-Muñoz. On August 12, 2003, the Municipality moved for post-trial judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). It argued that since plaintiffs had centered their negligence claim on the actions of Mayor Ruiz-Hernández and Peña-Muñoz, and since the jury had found both not liable, the Municipality itself could not be liable either. In a December 19, 2003 order, the district court agreed and entered

II.

A.          Denial of Mistrial Based on The Trial Delay

Plaintiffs argue the district court erred in not granting their motion for mistrial.

On April 4, 2003, the day the plaintiffs rested, the district court authorized the jury forewoman to take a previously scheduled vacation from April 11 through April 27 and halted the trial pending her return.  None of the parties objected to this continuance, despite having had the chance to do so both on April 4 and at sidebar on April 2.

On April 24, the district court announced a date for resumption of the trial, noting that it had two additional trials scheduled for May and that another juror had told the court he would be away from May 30 to June 22.  The district court decided that the trial would not reconvene until June 23.  Again, there were no objections.

On June 17, after the trial had already been on hold for two-and-a-half months and only a week before it was to resume, plaintiffs raised their first objection to the delay, moving for a

judgment for the Municipality.  The plaintiffs have not appealed from this ruling.

mistrial.[6]  The district court rejected the motion three days

later.  In a June 26 explanatory order, the court stated that

> calendar exigencies and the unopposed absence
> of two jurors in this case were the only
> reasons for the interruption . . . .  The
> adjournment was compelled under the
> circumstances since the Court could neither
> vacate the trial settings in the other cases
> nor did the plaintiffs in this case oppose the
> absence of the two jurors who took annual
> leave.

Review of denial of a motion for mistrial is for abuse of

discretion.  Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399

F.3d 52, 62 (1st Cir. 2005).  We will not reverse if there is no

showing of prejudice.  See, e.g., Ferrara & DiMercurio v. St. Paul

Mercury Ins. Co., 240 F.3d 1, 12 (1st Cir. 2001); Clemente v.

Carnicon-P.R. Mgmt. Assocs., 52 F.3d 383, 388 (1st Cir. 1995)

(finding no abuse of discretion in part because appellant did not

"demonstrate[] actual prejudice").  Plaintiffs argue that prejudice

may be presumed from a protracted delay after the close of

plaintiffs' evidence.  They cite supporting case law to this effect

from other courts.  See Young & Simon, Inc. v. Merritt Sav. & Loan,

Inc., 672 F.2d 401 (4th Cir. 1982); Citron v. Aro Corp., 377 F.2d

750 (3d Cir. 1967).  But whether prejudice may be presumed or not

is not the point.

---

[6] The belated objection came a day after the district court
granted judgment in favor of the defendants as to the due process
claims.

More important here is that plaintiffs did not offer any objection when consulted about the time off requested by the two jurors. As the district court pointed out in denying the mistrial request, plaintiffs had multiple opportunities to object to the initial three-week hiatus, and they did not do so. To the contrary, they explicitly told the district court they had no objection. Plaintiffs argue that their lack of objection "may" have stemmed from their concern "that the vacationing juror . . . could have become indisposed with plaintiffs for ruining her leisure time." If that were so, then plaintiffs made a tactical choice with which they must live. It may not be so: the record makes clear that the district court offered plaintiffs the chance to object at sidebar, out of the jury's presence, and they declined. This was still a tactical choice. As to the second portion of the continuance, the plaintiffs did not object until June 17, one week before trial was scheduled to resume.

Plaintiffs did too little, too late. See Clemente, 52 F.3d at 388 (refusing to find an abuse of discretion in the district court's denial of a mistrial where appellant had not "preserved her rights"); id. at 388 n.5 (noting that "the time to complain . . . is at the outset" and that "plaintiff did not make a peep" when the district court took the action which plaintiff later said warranted a mistrial). The cases plaintiffs rely on do not help them in the face of their failure to object. See Young &

-11-

<u>Simon</u>, 672 F.2d at 402 n.2 (ordering a new trial and repeatedly emphasizing that "counsel timely and persistently objected to the [delay] when it was proposed, when it occurred, and after the trial ended"); <u>Citron</u>, 377 F.2d at 753 (ordering a new trial despite a lack of objection to the delay, but emphasizing that the trial judge had told counsel that he was not going to cancel a planned trip "for this case or any other case," thus making clear in advance that objection would be futile).  The district court did not abuse its discretion.

B.        <u>Rule 50 Motion Re: Procedural Due Process</u>

The district court's grant of defendants' Rule 50(a) motion as to the procedural due process claim is subject to de novo review.  <u>Burton</u> v. <u>Town of Littleton</u>, 426 F.3d 9, 14 (1st Cir. 2005).  "We review the evidence, taking all inferences in favor of [plaintiffs], and ask whether a reasonable jury could have found defendants liable based on the evidence presented."  <u>Id.</u>

In a due process claim stemming from the termination of employment, "a public employee must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule, or contract, that he will continue to be employed."  <u>Wojcik</u> v. <u>Mass. State Lottery Comm'n</u>, 300 F.3d 92, 101 (1st Cir. 2002).  We determine whether such a property interest exists "by reference to state law."  <u>Bishop</u> v. <u>Wood</u>, 426 U.S. 341, 344 (1976).

While state law may create property interests, it is a separate question of federal law whether those interests rise to the level of a legitimate claim of entitlement sufficient to trigger procedural due process protections. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978) ("Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether an interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972))).

If the employee has such a state property interest, and that property interest rises to the level of a "legitimate claim of entitlement," id., then the employer cannot dismiss the employee without affording him due process of law. See, e.g., Gomez v. Rivera Rodriguez, 344 F.3d 103, 111 (1st Cir. 2003). In the public employment context, the required process typically includes "some kind of hearing" and "some pretermination opportunity to respond." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).

Under our case law a one-year contract of employment with a Puerto Rico government body usually suffices to show a property interest sufficient under Commonwealth law. See, e.g., Caro v. Aponte-Roque, 878 F.2d 1, 4 (1st Cir. 1989). Plaintiffs here argue that they had approximately one-year contracts of employment, that

those contracts had not yet expired, and therefore that defendants were required to give them pre-termination hearings.

The district court disagreed, finding that plaintiffs had no property interest in their employment past December 31, 2000, the day Law 52 funding expired. As we understand the ruling, the district court determined that either the Law 52 contract or municipal law required that each plaintiff's hiring contract be read to include the implicit condition that the term of employment was conditioned on the Municipality's receipt of Law 52 funding.

The district court's stated reasoning was as follows. The former mayor, it held, "lacked authority under the Law 52 contract then in effect" between the Municipality and the DLHR to extend the appointments beyond the term of funding specifically set forth in the award under Law 52. In response to the plaintiffs' argument that the former mayor could have "extended" plaintiffs' appointments and paid them using municipal funds, the district court stated that it "need not delve into that possibility" because "in making the appointments the former Mayor made sole and express reference to the Law 52 'proposal' as the mechanism which made them possible." The court relied on the hiring letters and their references to appointments "by way of" the Law 52 funding agreement. The court concluded:

> [T]he former Mayor clearly acted ultra vires in making appointments to Law 52 posts for terms that exceeded the duration of the Law 52 grant, and in so doing failed to extend

-14-

plaintiffs' property interest in continued employment in their positions beyond the term established in the Law 52 contract.

The court correctly referred to precedent to the effect that (1) illegally obtained public employment confers no property interest on the employee, see Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 319-20 (1st Cir. 1989) (en banc), and (2) written assurances in a letter of engagement are insufficient to contravene a "comprehensive network of statutory and regulatory directives governing the terms of . . . employment," Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 54-55 (1st Cir. 1990), overruled on other grounds by Educadores Puertorriqueños en Accion v. Hernández, 367 F.3d 61, 64 (1st Cir. 2004).

On appeal, plaintiffs argue that the due process interest was created by the hiring letters, which themselves do not explicitly limit the terms of the appointments to the limits on Law 52 funding. They say the Mayor had authority to enter into a contract of a term of one year legally, without limits under Law 52, by providing additional funding from the municipal budget.

We understand the district court to have ruled as a matter of law that Law 52, by its terms, prohibits the extension of Law 52-funded jobs using municipal funds. But the law itself contains no such prohibition. Indeed, the law speaks only in general terms: it states that funds disbursed thereunder shall be used to promote, inter alia, "employment opportunities in

-15-

occupations with future possibilities," "jobs that are in demand in the present market," and "the creation of high productivity employment opportunities." P.R. Laws Ann. tit. 29, § 711c(b). It further states that "[s]aid moneys may also be used to maintain existing jobs, extend their duration, modify compensation as [a] transitory remedial measure in situations that may involve possible job loss, when it is deemed justifiable in the Secretary's judgment." Id. § 711c(c). The statute does not support the district court's conclusion.[7]

Nothing in the terms of the Law 52 contract between the Commonwealth and the Municipality adds such a prohibition. It is true that the Law 52 contract was effective only "until December 31, 2000," that it listed the "number of months" per worker as six, and that it required that the Law 52 funds be held in a separate account and that no expenditures be made from that account beyond the sum in the grant. But none of these provisions forbids, expressly or impliedly, the use of other funds to fill out a contract as to which Law 52 funds had been exhausted. Indeed, the seventh paragraph of Agreement provides:

> The incentive approved shall be applied to the
> salary and fringe benefit costs of the

---

[7] Defendants cite Gomez v. Rivera Rodriguez, 344 F.3d 103, 107 (1st Cir. 2003), for the proposition that "Law 52 employment is contingent upon Law 52 funding." Whether or not this is true, it is not the question here. The question is whether a job that began as Law 52 employment may be continued, using municipal funds, after the Law 52 funding expires.

-16-

> employments agreed upon in this contract. If
> the Municipality offers to the employees other
> benefits which are not part of this agreement,
> the Municipality assumes responsibility
> therefore and pays them with its funds.

Of considerable significance is that the Municipality did, in fact, provide non-Law 52 money from municipal coffers to fund the plaintiffs' contracts for one month, January 2001. The defendants explain this on the ground that they continued to pay the plaintiffs only while they investigated whether the Law 52 funding had in fact been exhausted. Perhaps a jury could so conclude, but because municipal funds were used, it is difficult to conclude as a matter of law that there was a prohibition on the use of municipal funds to fund plaintiffs' employment through June 30. The same is true for the rationale, used by the district court, that the contract mentioned only Law 52 funding. Given the glancing nature of the reference in the hiring letters to Law 52 funding, that rationale is not dispositive.

The district court's opinion also appears to say that under municipal law, the Mayor was forbidden from creating jobs (or extending the duration of jobs) unless he had secured, in advance, all of the necessary funds. It may be that under Puerto Rican municipal law the Mayor was acting ultra vires, as the district court found. But at this stage we cannot resolve the question. The district court did not explain why the Mayor's actions should be deemed ultra vires. While the Mayor could not expend more <u>Law</u>

-17-

52 monies than he had available, there is no explanation so far as to why the Municipality was precluded from using other sources of funds to meet the commitment to the plaintiffs. The plaintiffs' brief on appeal argues, in contrast, that the former mayor was fully empowered to use municipal funds (even those not yet allocated) to extend the duration of jobs created by other means. But it, too, has cited to no law that supports its conclusion.[8]

Absent clarity on these issues of Puerto Rico municipal law, the best course is to vacate the judgment and remand to the district court. Since a new trial on the procedural due process issue may not be necessary -- for example, the legal questions may be susceptible to resolution, in whole or in part, via summary judgment -- we leave it to the district court to determine the

---

[8] Plaintiffs argue that the mayor unquestionably had such authority because under "basic principles of budgeting," he could have taken note of the fact that the Municipality had received Law 52 grants for many years in a row and anticipated that the Municipality would receive another such grant in 2001. We are unconvinced. Defendants, for their part, argue that "[i]n the absence of funds earmarked for the salaries of improperly appointed Law 52 employees, the Municipality cannot pay for such expenses unless it makes a readjustment based on a budgetary surplus." But the law defendants cite for this proposition, P.R. Laws Ann. tit. 21, § 4309, does not support it. The provision merely states when and under what circumstances a legislature may adjust a municipal budget; it contains no other express limitations or proscriptions. See id.

nature of the proceedings to follow.[9]  See Rivera Alicea v. United States, 404 F.3d 1, 4 (1st Cir. 2005).

We add a few points.  What we have been discussing is whether Puerto Rican law supplies any sort of property interest once the Law 52 funding ceased.

That still leaves the question, assuming plaintiffs have some property interest under Commonwealth law, of whether such state property interests are among those which give rise to a "legitimate claim to entitlement protected by the federal due process clause" and whether existing state remedies are adequate. See Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 195-96 (2001).

### III.

We affirm the denial of the mistrial motion.  We vacate the judgment of the district court for defendants with respect to the procedural due process claim and remand the case for further proceedings consistent with this opinion.  No costs are awarded.

---

[9] We also note an admission in plaintiffs' brief: "Plaintiffs submit . . . that, although clearly related, plaintiffs' employment contracts' effectiveness was not contingent on the availability of Law 52 funds.  This is not to say that termination of those funds would not have given rise to good cause to terminate the relevant employment contracts."