LIPEZ, Circuit Judge,
dissenting in part.
Although the majority affirms the district court’s grant of a directed verdict[9] in favor of Ciampa, it does not do so on the familiar ground that no reasonable jury could find Ciampa liable for retaliation based on the evidence presented at the first trial. Instead, it concludes that any error in the granting of the directed verdict for Ciampa was “harmless” because of the rejection of plaintiffs’ claims against Cachopa by a different jury in a subsequent trial. In my view, this harmless *36 error analysis is unprecedented and unsupportable. Therefore, I respectfully dissent from the decision to affirm the directed verdict in favor of Ciampa.[10]
I.
Because it is important for understanding the flaws in the majority’s harmless error analysis, I briefly summarize the relevant procedural history. In January 2008, plaintiffs proceeded to trial on their retaliation claims against Ciampa, Cachopa, and other defendants. Early in that trial, the court granted a mistrial on all claims against Cachopa. Plaintiffs continued to present evidence against the remaining defendants. At the close of their case, the court granted a directed verdict on all claims against Ciampa and the remaining defendants. Following the court’s denial of plaintiffs’ motion for reconsideration and for new trial, plaintiffs appealed. Several weeks later, plaintiffs proceeded to trial on their retaliation claims against Cachopa. Plaintiffs’ allegations against Cachopa, although overlapping with their allegations against Ciampa, were not identical. The jury returned a verdict for Cachopa, and plaintiffs appealed from that verdict. Plaintiffs’ two appeals, from the dispositions in the first and second trials, were later consolidated in the proceeding now before us.
II.
We review de novo the district court’s decision to grant a directed verdict. Acevedo-Feliciano v. Ruiz-Henández, 447 F.3d 115, 121 (1st Cir.2006). The district court could properly grant a directed verdict for Ciampa at the close of plaintiffs’ case in the first trial only if, based on the evidence presented at the time of its ruling, “a reasonable jury would not have a legally sufficient evidentiary basis to find for [plaintiffs].” Fed.R.Civ.P. 50(a). In our review of the grant of a directed verdict, we apply the same standard as the district court. Id. We must “examine the evidence and all fair inferences in the light most favorable to the plaintiff[s] and may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence.” Id. (internal quotation marks omitted). Viewing the evidence in this light, we may uphold the directed verdict for Ciampa only if no reasonable jury could find defendant liable based on the evidence presented by plaintiffs at the first trial. See Acevedo-Feliciano, 447 F.3d at 121.
In order to prevail on their retaliation claims, plaintiffs had to show that they “engaged in constitutionally protected conduct and that this conduct was a substantial or motivating factor in the alleged adverse employment action.” Welch v. Ciampa, 542 F.3d 927, 936 (1st Cir.2008). The majority acknowledges that plaintiffs engaged in arguably constitutionally protected conduct, that the adverse actions by Cachopa and Ciampa, viewed collectively, were arguably harmful enough to support a viable claim, that the parties proffered conflicting evidence as to motive, and that this was “a suitable case for the jury to sort out cause, motive and effect.” However, having recognized these central disputes suitable for jury determination, the majority does not then evaluate the directed verdict on the merits, assessing whether a reasonable jury could find Ciampa liable based on the evidence presented at the first trial. Instead, the majority looks to the second trial, in which Ciampa was not a party, and views that trial as a proxy for what would have happened if plaintiffs’ claims had gone to the jury in the first trial. The majority concludes that even if *37 the district court erred in directing a verdict for Ciampa, any error was harmless, because similar retaliation claims against Cachopa went to a jury in the second trial and that jury ultimately found in his favor. None of the parties raised this harmless error argument in their briefing.[11] That is not surprising. There is no precedent for such an application of harmless error.
As a general matter, under the harmless error rule, we disregard “errors or defects which do not affect the substantial rights of the parties.” 28 U.S.C. § 2111; see also Fed.R.Civ.P. 61. In the ordinary harmless error case, an error made in the proceedings leading up to the final judgment — for example, an erroneous evidentiary ruling — is deemed harmless to the ultimate disposition.
In certain narrow factual circumstances, courts have concluded that an error in the final disposition — for example, an erroneous directed verdict — was harmless in light of subsequent proceedings. For example, in Earle v. Benoit, 850 F.2d 836, 840 (1st Cir.1988), the primary authority relied on by the majority for its harmless error analysis, the plaintiff, Earle, alleged that defendant police officers had conspired to deprive him of his civil rights by subjecting him to unlawful arrest, illegal searches, excessive force, and other harassment. At the close of Earle’s case before the jury, the court directed a verdict in favor of defendants on Earle’s conspiracy claim, but permitted his other claims to go to the jury. Id. at 837. That jury ultimately returned a verdict for defendants, responding negatively to special jury questions regarding whether the alleged unlawful arrest, illegal searches, and use of excessive force violated Earle’s civil rights. Id. at 845.
The Earle court concluded that the directed verdict was erroneously granted because “there was sufficient circumstantial evidence (had the jury found in Earle’s favor on the substantive claims) for a reasonable jury to have inferred a conspiracy.” Id. at 844. Nevertheless, this error was harmless because a § 1983 conspiracy requires an “actual deprivation of a right secured by the Constitution and laws,” and therefore the jury’s ultimate rejection of Earle’s underlying civil rights claims “fatally eviscerated Earle’s conspiracy claim.” Id. at 845 (internal quotation marks omitted).[12] The court reasoned that, in a real and practical sense, even if the district court had permitted Earle’s conspiracy claim to go to the jury, that claim would have been rejected by the jury. Given the jury’s findings on Earle’s claims of significant civil rights violations, the jury could not have also found defendants liable for a civil rights conspiracy. Id. Moreover, “as a practical matter,” in light of the jury’s *38 consistent rejection of Earle’s civil rights claims, it was “inconceivable” that “the jury would have found for plaintiff on the closely related conspiracy charge.” Id.; see also Goulet v. New Penn Motor Express, Inc., 512 F.3d 34, 43 (1st Cir.2008) (finding wrongly directed verdict harmless “where the jury’s ultimate verdict necessarily defeats the claim” on which directed verdict was erroneously granted (emphasis added)).[13]
As I explain more fully below, this case is fundamentally different from Earle for two reasons. First, the directed verdict for Ciampa and the jury verdict for Cachopa occurred not in a single trial, but in two separate trials that culminated in two separate appeals. Second, given the nature of plaintiffs’ claims and the particular facts of this case, the jury verdict for Cachopa did not necessarily defeat plaintiffs’ claims against Ciampa.
III.
In Earle, as noted, the directed verdict and the ultimate jury verdict occurred in the course of a single trial proceeding. Thus, the Earle court concluded that given the jury’s findings on Earle’s underlying civil rights claims, that jury could not have rationally found for Earle on his conspiracy claim. Here, of course, the directed verdict on plaintiffs’ claims against Ciampa and the jury’s rejection of plaintiffs’ claims against Cachopa occurred during two separate trial proceedings, which culminated in separate dispositions and separate appeals. In the first trial, following the court’s grant of a mistrial on all claims against Cachopa, the court directed a verdict on all remaining claims against Ciampa and the other defendants. Thus, none of plaintiffs’ claims reached a jury in the first trial. In the second trial, plaintiffs’ claims against Cachopa were tried by a jury, and that jury found for Cachopa.
Although the majority glosses over this somewhat odd procedural history, it cannot be ignored. Here, unlike in Earle and similar cases, we cannot say with any certainty how the first jury would have decided plaintiffs’ claims against Ciampa if the directed verdict had not been granted, because that jury made no findings on any of *39 plaintiffs’ claims. Without any findings by the first jury, we have no basis for concluding that the first jury could not have rationally found for plaintiffs on their claims against Ciampa. We cannot say, as the Earle court did, that if the district court had not granted the directed verdict, the jury necessarily would have rejected plaintiffs’ claims against Ciampa.
My concerns with the majority’s unique harmless error analysis are further heightened by its constitutional implications. Under the Seventh Amendment, plaintiffs have a right to a jury trial on their claims for legal relief under § 1983.[14] City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 709-10, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). Of course, it is well-established that the proper grant of a directed verdict does not offend a party’s Seventh Amendment right to a jury trial. Galloway v. United States, 319 U.S. 372, 389, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943); 9B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2522 (3d ed.2008). The directed verdict procedure is constitutional because a properly granted directed verdict “only deprives the losing party of the possibility of an unreasonable verdict, a possibility not protected by the Constitution.” Wright & Miller, supra, § 2522. The analysis applied in Earle, although styled as a harmless error analysis, is a variant on this principle. The Earle court found that, in light of the jury’s finding on the underlying civil rights claims, the jury could not rationally find for plaintiff on his conspiracy claim. Thus, the court’s decision to withdraw Earle’s conspiracy claim from the jury did not violate any right to a jury trial because it only deprived Earle of the possibility of an irrational verdict.
Here, however, the majority does not hold, under either the traditional directed verdict analysis or the Earle harmless error analysis, that the directed verdict for Ciampa in the first trial only deprived plaintiffs of the possibility of an unreasonable verdict at the hands of the first jury. On the contrary, the majority acknowledges that plaintiffs presented evidence at the first trial that was arguably sufficient for the jury to find Ciampa liable for retaliation. In these circumstances, the decision not to allow plaintiffs’ claims against Ciampa to be heard by the jury, and to affirm the directed verdict in favor of Ciampa, implicates plaintiffs’ Seventh Amendment rights.
IY.
Even if the directed verdict for Ciampa and the jury verdict for Cachopa had occurred in the course of a single trial, Earle and similar cases would not support a finding of harmless error here. On the facts of this case, as set forth by the majority, it is clear that the jury verdict for Cachopa did not “necessarily defeat[]” plaintiffs’ claims against Ciampa. Goulet, 512 F.3d at 43. Instead, for a variety of reasons, a rational jury could logically reject plaintiffs’ retaliation claims against Cachopa, but at the same time uphold plaintiffs’ retaliation claims against Ciampa.[15]
For example, a rational jury could have reached different conclusions about Ciampa and Cachopa on the issue of motive. *40 Plaintiffs’ retaliation claims required a showing that Ciampa, Cachopa, or both took adverse actions motivated at least in part by plaintiffs’ protected conduct. See Welch, 542 F.3d at 936. The inquiry into motive is highly individualized and fact-specific, requiring an evaluation of the defendant officers’ actual, subjective intent. See, e.g., Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 97 (1st Cir.2003) (explaining that “subjective intent is an essential element” of analogous political discrimination claim under First Amendment). As the majority acknowledges, there was a central dispute in this case on the element of motive— plaintiffs’ case as to retaliatory motive “rested primarily on soft inference as against flat denials” by Ciampa and Cachopa, and in particular, both defendant officers denied knowing who had testified before the grand jury. A rational jury could well find, based on its assessment of the defendant officers’ credibility or for other reasons, that Ciampa and Cachopa had different levels of knowledge about plaintiffs’ protected conduct or otherwise had different subjective motives for their actions.
Similarly, the alleged retaliatory acts by the two defendant officers, although overlapping, were not identical. As the majority acknowledges, plaintiffs also alleged some retaliatory acts “for which Ciampa [was] the primary actor[];” these “were not squarely presented to the jury in the second trial.” For example, plaintiffs alleged that Ciampa took several retaliatory acts during the period he served as acting police chief; those acts included directing Chamberlin to undergo a medical examination and issuing letters of warning to Wohlgemuth that were placed in his personnel file.[16]
The majority, relying on Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir.1989) (en banc), asserts that these additional acts by Ciampa do not rise to the level of adverse employment actions sufficient to sustain a retaliation claim. However, as the majority acknowledges, plaintiffs’ central claim against the defendant officers was that they carried on “a systematic campaign of retaliatory harassment” against plaintiffs in 2004 and 2005. For purposes of evaluating whether this campaign of harassment rose to the level of an adverse employment action, the acts of harassment cannot be isolated and analyzed separately. Instead, the trier of fact must determine whether the course of harassment, taken as a whole, “resulted] in a work situation ‘unreasonably inferior’ to the norm for the position.” Agosto-de-Feliciano, 889 F.2d at 1218; accord Welch, 542 F.3d at 937. Given the somewhat different evidence of harassment by the two defendant officers, a jury could reasonably find that the actions by Cachopa did not amount to a campaign of retaliatory harassment, but the somewhat different actions by Ciampa did.
Y.
In this case, the majority declines to evaluate the directed verdict for Ciampa under the well-established standard-assessing whether, viewing the evidence presented at the first trial in the light most favorable to plaintiffs, no reasonable jury could find Ciampa liable for retaliation. Indeed, the majority effectively acknowledges that if it did apply the proper standard, focusing on the evidence before the district court at the time of its ruling, the majority would have to conclude that the directed verdict for Ciampa was errone *41 ously granted and remand the case for a new trial. To avoid that result, the majority turns to a harmless error analysis. However, for the reasons discussed above, the majority is also unable to engage in the harmless analysis conducted in Earle. Earle and similar cases do not support a finding of harmless error where, as here, the directed verdict and the subsequent jury verdict occurred in the course of two separate trial proceedings, as to two different defendants, and as to somewhat different allegations.
In the end, the majority resorts to affirming based on its impression, from the paper record, that Cachopa was at least as culpable as Ciampa, that the jury in the second trial rejected plaintiffs’ claims against Cachopa, and that remanding for a new trial on the claims against Ciampa would therefore be pointless. I cannot join in this reasoning, particularly where plaintiffs’ constitutional right to a jury trial is implicated. The district court’s grant of a directed verdict cannot be affirmed simply because the majority feels as a matter of rough justice that a remand would be a waste of time.

. We note that Federal Rule of Civil Procedure 50 was amended in 1991, and “the term judgment as a matter of law was adopted to refer to preverdict (directed verdict) and post-verdict (judgment notwithstanding the verdict) motions with a terminology that does not conceal the common identity of two motions made at different times in the proceeding.” Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 199 n. 14 (1st Cir.1996) (internal quotation marks omitted). We refer to the district court's ruling as a directed verdict to remain consistent with the majority's terminology.

. I join the majority’s decision in all other respects.

. Instead, defendants contended in their briefing, in the traditional manner, that no reasonable jury could find for plaintiffs on their retaliation claims based on the evidence presented at the first trial, and therefore the directed verdict was properly granted. Defendants contended, inter alia, that there was no evidence Ciampa or Cachopa knew that plaintiffs cooperated with the special prosecutor or testified before the grand jury, and that any retaliation that occurred after plaintiffs' December 2004 hostile work environment letters did not rise to the level of an adverse employment action. The only suggestion by defendants of an argument even resembling the majority’s harmless error analysis is their statement, in a footnote, that "the jury verdict in Cachopa's favor in Trial Two further supports the reasonableness of the Court's entry of a Directed Verdict in Trial One.”

. The court acknowledged that Earle provided evidence of other more trivial confrontations with police, such as being stopped for alleged traffic violations, but concluded that no jury could have found that any of these incidents constituted a deprivation of a constitutional right, as required for a § 1983 civil rights conspiracy. Id. at 845.

. My research has uncovered a smattering of other cases, from our own circuit and others, applying harmless error analysis to a directed verdict. Like Earle, these decisions have found harmless error where the jury verdict “necessarily defeats the claim” on which a directed verdict was incorrectly granted. Goulet, 512 F.3d at 43; see id. at 42-43 (concluding that any error in directed verdict for employer on plaintiffs hybrid Labor Management Relations Act § 301 claim was harmless, where the jury’s ultimate rejection of plaintiff's § 301 claim against union was "fatal” to claim against employer); see also, e.g., Uphoff Figueroa v. Alejandro, 597 F.3d 423, 433 (1st Cir.2010) (holding that even if court erred in directing verdict for employer on plaintiff's state law retaliation claim, it was harmless given the jury’s finding for employer on "identical” federal law retaliation claim); Snyder v. Ag Trucking, Inc., 57 F.3d 484, 491 (6th Cir.1995) (holding that directing a verdict for employer on claim for willful violation of ADEA was harmless error because, given jury’s rejection of underlying ADEA claim, it "could noi" have found willful violation of ADEA); Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir.1990) (finding any error in failing to submit § 1983 claim to jury harmless, given jury's conclusion that no defendants violated plaintiff's constitutional rights by use of excessive force); Mello v. K-Mart Corp., 792 F.2d 1228, 1231 (1st Cir.1986) (concluding that error in directing verdict for manufacturer was harmless where jury ultimately rejected product liability claims against vendor, and in reaching that verdict jury necessarily had to find that there was no manufacturing defect); Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 453 (7th Cir.1982) (holding that any error in directing verdict for defendant on plaintiff’s claim for conspiracy to defraud was harmless, given that jury ultimately rejected underlying fraud claim).

. The Seventh Amendment provides: “In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.”

. Unlike in Earle, no special verdict form or special questions were put to the jury in the second trial, and therefore we cannot know the basis for the jury’s verdict for Cachopa.

. In addition, some evidence of adverse conduct, including changes made to plaintiffs’ training locations, was presented at the second trial without a clear showing of whether Cachopa or Ciampa was the primary actor.