Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

Nos. 12-1690, 13-1819

JOSEPH IANTOSCA, Individually and as Trustee of the Faxon Heights
Apartments Realty Trust and Fern Realty Trust,

Plaintiff,

BELRIDGE CORPORATION; GAIL A. CAHALY; JEFFREY M. JOHNSTON;
BELLEMORE ASSOCIATES, LLC; MASSACHUSETTS LUMBER COMPANY, INC.;
JOSEPH J. IANTOSCA, As guardian of Joseph Iantosca Sr. and as
Trustee of Faxon Heights Apartments Realty Trust and Fern Realty
Trust; DAVID A. IANTOSCA, As guardian of Joseph Iantosca Sr. and
as Trustee of the Faxon Heights Apartments Realty Trust and Fern
Realty Trust,

Plaintiffs, Appellees,

UNITED STATES OF AMERICA,

Intervening Plaintiff, Appellee,

v.

BENISTAR ADMINISTRATIVE SERVICES, INC.; DANIEL CARPENTER; STEP
PLAN SERVICES, INC.; BENISTAR 419 PLAN SERVICES, INC.,

Defendants, Appellants,

MOLLY CARPENTER; BENISTAR PROPERTY EXCHANGE TRUST COMPANY, INC.;
BENISTAR LTD.; BENISTAR EMPLOYER SERVICES TRUST CORPORATION;
CARPENTER FINANCIAL GROUP, LLC; BENISTAR INSURANCE GROUP, INC.;
TRAVELERS INDEMNITY COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, <u>U.S. District Judge</u>]

Before

Thompson, <u>Circuit Judge</u>,
Souter,[*] <u>Associate Justice</u>,
and Kayatta, <u>Circuit Judge</u>.

————————

<u>William E. Murray</u>, with whom <u>Gordon & Rees LLP</u>, <u>Sebastian R. Colley</u>, <u>Greenberg Traurig LLP</u>, <u>Joseph Michael Pastore, III</u>, and <u>Pastore & Dailey LLC</u> were on brief, for appellants.
    <u>Thomas W. Evans</u>, with whom <u>Anthony R. Zelle</u>, <u>Zelle McDonough & Cohen, LLP</u>, <u>William C. Nystrom</u>, <u>Colleen C. Cook</u>, and <u>Nystrom Beckman & Paris</u> were on brief, for appellees.
    <u>Patrick J. Urda</u>, Tax Division, Department of Justice, with whom <u>Kathryn Keneally</u>, Assistant Attorney General, <u>Carmen M. Ortiz</u>, United States Attorney, and <u>Bruce R. Ellisen</u>, Tax Division, Department of Justice, were on brief, for intervening appellee.

————————

June 20, 2014

————————

————————

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** This appeal is from a final district court judgment in favor of individuals and entities who brought a reach-and-apply action to collect on a Massachusetts state court judgment. We affirm.

## I. Background

This is the latest chapter in protracted litigation arising out of financial misconduct by Daniel Carpenter and entities controlled by him. The full story can be found at Boston Property Exchange Transfer Co. v. Iantosca, 720 F.3d 1, 3 n.1 (1st Cir. 2013), and United States v. Carpenter, 736 F.3d 619, 622-26 (1st Cir. 2013). Here, it is enough to provide a brief account.

In what we will call the "Cahaly litigation," the plaintiffs in this case (now "Appellees") won a Massachusetts state court judgment against Carpenter and various individuals and business entities associated with him (the "original defendants").[1]

---

[1] The plaintiffs in this case are Joseph Iantosca, Individually and as Trustee of the Faxon Heights Apartments Realty Trust and Fern Realty Trust; Belridge Corporation; Gail A. Cahaly; Jeffrey M. Johnston; Bellemore Associates, LLC; Massachusetts Lumber Company, Inc.; Joseph J. Iantosca, As guardian of Joseph Iantosca Sr. and as Trustee of Faxon Heights Apartments Realty Trust and Fern Realty Trust; and David A. Iantosca, As guardian of Joseph Iantosca Sr. and as Trustee of the Faxon Heights Apartments Realty Trust and Fern Realty Trust. Joseph J. Iantosca and David A. Iantosca were not plaintiffs in the Cahaly litigation but are plaintiffs here as guardians of Joseph Iantosca, Sr. who was a Cahaly plaintiff and who is the sole non-Appellee plaintiff in this case.

The original defendants who are present in this case are Benistar Property Exchange Trust Company, Inc.; Daniel Carpenter; Molly Carpenter; Benistar Administrative Services, Inc.; Benistar

See Cahaly v. Benistar Prop. Exch. Trust Co., 885 N.E.2d 800 (Mass. 2008). A number of those original defendants in the Cahaly litigation, including Benistar Administrative Services, Inc. ("BASI"), were found to be alter egos of Carpenter. The Cahaly judgment was not satisfied.

Sometime after the judgment, Appellees discovered that independent litigation, see Step Plan Servs., Inc. v. Koresko, 12 A.3d 401 (Pa. Super. Ct. 2010), had resulted in a settlement to be paid to BASI and to three other corporations connected to Carpenter: Step Plan Services, Inc. ("STEP"); Benistar 419 Plan Services, Inc. ("Benistar 419"); and Benistar Insurance Group, Inc. ("Benistar Insurance").[2] In attempting to obtain the settlement proceeds to satisfy the Cahaly judgment, Appellees brought the instant reach-and-apply action in Massachusetts state court against the original defendants and the three other corporations as new ones, though Benistar Insurance was subsequently dismissed by stipulation. Accordingly, we will use the term "new defendants" to refer only to STEP and Benistar 419.[3]

---

Ltd.; Benistar Employer Services Trust Corporation; and Carpenter Financial Group, LLC.

[2] There is some uncertainty as to which entities would actually receive the settlement proceeds, see Iantosca v. Step Plan Servs., Inc., 604 F.3d 24, 30 & n.6 (1st Cir. 2010), but it does not affect our analysis here.

[3] Also named as defendants were the insurers that would pay the settlement proceeds: certain Underwriters at Lloyd's, London and Travelers Insurance Company (which was later designated as both

-4-

At Appellees' request, the state court granted a temporary restraining order enjoining distribution of the settlement proceeds until it was determined whether they could be used to satisfy the Cahaly judgment. Then the reach-and-apply action was removed to federal district court, which issued a preliminary injunction tracking the restraining order, see Iantosca v. Benistar Admin Servs., Inc., Civ. No. 08-11785-NMG, 2009 WL 2382750, at *1 (D. Mass. July 30, 2009), which we affirmed following an interlocutory appeal. See Iantosca v. Step Plan Servs., Inc. ("Iantosca I"), 604 F.3d 24, 34 (1st Cir. 2010).

Back in the district court,[4] the case proceeded to a jury trial on the issue, among others, of whether the new defendants were alter egos of Carpenter, such that their corporate forms could be disregarded and the settlement proceeds could be reached and applied to the Cahaly judgment.[5] The jury returned a verdict in

_____

Travelers Indemnity Company and Travelers Property Casualty Company of America).

[4] After the interlocutory appeal, the Government intervened as a plaintiff to claim its own interest in the settlement proceeds based on tax liens against BASI and Benistar 419. The Government joins Appellees here.

[5] To be precise, the jury was asked whether the new defendants were alter egos of Carpenter or BASI, which itself had been deemed an alter ego of Carpenter in the Cahaly litigation.

-5-

favor of Appellees, and the district court entered judgment. The new defendants, BASI, and Carpenter (now "Appellants") appealed.[6]

**II.**

Appellants argue that (i) they, as the new defendants, were not subject to personal jurisdiction; (ii) the claims against the new defendants are res judicata in their favor; (iii) the district court should have declared a mistrial; and (iv) the jury was improperly instructed.

**A.**

Our review of the district court's personal jurisdiction analysis in this case is de novo. See Bluetarp Fin., Inc. v. Matrix Const. Co., 709 F.3d 72, 79 (1st Cir. 2013). The court found that it had jurisdiction over Carpenter, and Appellants do not contest that finding. Instead, they say the court lacked jurisdiction over them.

This claim is patently devoid of weight, for jurisdiction over the new defendants flows as a matter of course from the jury's finding that they are, in fact, alter egos of Carpenter, over whom the court exercised uncontested jurisdiction. See Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653 & n.18 (5th Cir. 2002) ("[F]ederal courts have consistently acknowledged that it is

---

[6] The court entered a second judgment because some further proceedings, irrelevant to our analysis, occurred after appeal was taken. Subsequently, a second appeal was filed, and the two appeals were consolidated.

compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."); cf. United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992) ("[I]f the record contains facts that warrant disregarding [a subsidiary]'s corporate independence, the district court was entitled to find [the parent] subject to personal jurisdiction in Massachusetts on the basis of its relationship with its subsidiary."); Donatelli v. Nat'l Hockey League, 893 F.2d 459, 466 (1st Cir. 1990) ("Since the essence of personal jurisdiction is to bring responsible parties before the court, a corporation which is actually responsible for its subsidiary's decision to undertake instate activities should, in all fairness, be within the state courts' jurisdictional reach.").

**B.**

The district court's denial of Appellants' res judicata defense is likewise reviewed de novo. See R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). Appellants say that the claims against the new defendants are precluded by the Cahaly judgment, which included terms dismissing all claims against

"Jane Doe Entities controlled by Daniel Carpenter." According to Appellants, such Jane Doe entities include the new defendants.

Today we reaffirm the position that we staked out in Iantosca I, where we explained that "[t]o extend claim preclusion in favor of new defendants, who were not named or served as parties in the earlier litigation, would be dubious as a matter of policy and is not supported by any case cited by [A]ppellants." 604 F.3d at 30. It is unclear whom Appellees meant to capture with their Jane Doe claims in the Cahaly litigation, but it is inconceivable that when the state court dismissed those claims, it meant to preclude Appellees prospectively from bringing a collection action against corporations later determined to be alter egos of those liable on the state court's judgment.[7]

---

[7] At the time that the district court first entertained the res judicata defense, a motion was pending before the state court that sought clarification of the Cahaly judgment's dismissal of the Jane Doe claims. Accordingly, the district court's denial of the defense was without prejudice to Appellants moving for reconsideration in the event that the state court issued an inconsistent ruling. Iantosca, 2009 WL 2382750, at *6. The state court ultimately declined to supply a clarifying order both because the Cahaly litigation was no longer before that court and because the judge who had issued the Cahaly judgment no longer sat on the court. The state court did, however, note in an advisory fashion that Appellants failed to persuade it that the district court and our court in Iantosca I had reached an incorrect result. Appellants now argue that, in rejecting the res judicata defense, the district court improperly relied on this advisory state court opinion. But the district court had already denied the res judicata motion prior to the state court's rendering its advisory opinion. Far from relying on that opinion, the district court simply left the door open for Appellants to move for reconsideration in the event of a contrary state court determination, which never came.

## C.

The district court ordered Appellees to omit from their case any reference to criminal proceedings pending against Carpenter. When the Appellees nevertheless played a videotaped deposition before the jury that mentioned Carpenter's indictment, Appellants moved for a mistrial. The denial of the mistrial motion is reviewed for abuse of discretion. See Acevedo-Feliciano v. Ruiz-Hernandez, 447 F.3d 115, 120 (1st Cir. 2006).

For several reasons, the district court did not abuse its discretion in refusing to declare a mistrial. First, as a general rule, the argument for mistrial is weak when the party seeking it passed up an opportunity to file a timely objection. See id. at 120-21; Clemente v. Carnicon-P.R. Mgmt. Assocs., L.C., 52 F.3d 383, 387, 388 n.5 (1st Cir. 1995), abrogated on other grounds by United States v. Gray, 199 F.3d 547 (1st Cir. 1999). That is what happened here. The videotape had been designated in advance as evidence to be presented, and although Appellants objected to certain matters covered in it, they raised no objection to the indictment reference. What is more, at the time Appellants filed their objections, they had every incentive to attend to the mention of the indictment, for the court had yet to issue the order prohibiting references to the criminal proceedings. As the district court said, "[I]f you knew there was a reference to the Indictment on the tape, it behooved you . . . to call it to my attention."

Second, for us to conclude that a district court abused its discretion in refusing to declare a mistrial, the movant needs to show prejudice, see United States v. Freeman, 208 F.3d 332, 339 (1st Cir. 2000), which is less likely when the offending remark was isolated and passing. See United States v. Diaz, 494 F.3d 221, 227 (1st Cir. 2007); United States v. Lee, 317 F.3d 26, 35 (1st Cir. 2003). Here, the use of the word "indictment" was the sole reference Appellees' case made to the criminal proceedings, and it added little, if anything, to the substance of what Carpenter himself disclosed. As the district court said, Carpenter's own plead of Fifth Amendment privilege in this civil case invited the jury to infer that he potentially faced criminal liability. Appellants have failed to demonstrate prejudice.

Third, as a response to a wayward remark, declaring a mistrial is a "last resort." United States v. Sepulveda, 15 F.3d 1161, 1184 (1st Cir. 1993). The usual remedy includes instructing the jury to disregard the comment, see Lee, 317 F.3d at 35, but when the district court here offered to give such an instruction, Appellants declined. They now complain that the court discouraged them from accepting the instruction by pointing out that it had the potential to exacerbate the problem by drawing more attention to the errant reference. But this does not neutralize Appellants' refusal. The district court simply sounded a note of prudence, and noting the risk inherent in a curative instruction did not change

-10-

the fact that the court offered to give one. Least of all does it demonstrate abuse of discretion in denying the mistrial motion.[8]

### D.

The adequacy of jury instructions in explaining the law is reviewed de novo. See Goodman v. Bowdoin Coll., 380 F.3d 33, 47 (1st Cir. 2004). Appellants find fault with what the instructions said about pleading the Fifth and determining that a corporation is an alter ego.

The district court instructed that, from Carpenter's invocation of the Fifth Amendment, the jury was "permitted but . . . not required to draw the inference that the withheld information would have been unfavorable." The instruction was sound law. See In re Carp, 340 F.3d 15, 23 (1st Cir. 2003) ("[I]n a civil proceeding, the drawing of a negative inference is a permissible, but not an ineluctable, concomitant of a party's invocation of the Fifth Amendment. . . . [T]he trial court has discretion over whether a negative inference is an appropriate response to the invocation of the Fifth Amendment in a particular civil case."); United States v. Stein, 233 F.3d 6, 15 (1st Cir. 2000) ("[T]he Supreme Court has adhered to the prevailing rule that the Fifth Amendment does not forbid allowing adverse inferences to be drawn

---

[8] Instead of a curative instruction, Appellants wanted to put on their own witness to explain the nature of the criminal proceedings against Carpenter. The district court ruled that if they did so, Appellees too would be allowed to mention the criminal proceedings. We see no abuse of discretion in this ruling, either.

against parties to civil actions from their refusal to testify in response to probative evidence offered against them." (citing Baxter v. Palmigiano, 425 U.S. 308, 317 (1976))).

The court went on to instruct that, from a corporate officer's invocation of the Fifth, the jury was "permitted but not required to draw the inference that the information withheld . . . would have been unfavorable to the corporation [with] which he or she is associated." Appellants take issue with this statement as well, citing Veranda Beach Club Ltd. Partnership v. Western Surety Co., where we said that "[i]n a civil case . . . an individual's invocation of a personal privilege against self-incrimination cannot, without more, be held against his corporate employer in circumstances analogous to those at the bar." 936 F.2d 1364, 1374 (1st Cir. 1991). Given the careful qualifications in this language, however, as a district court in this circuit has previously recognized, "Veranda Beach establishes no per se rule which insulates a corporate employer from any adverse inference based on an employee's invocation of his Fifth Amendment privilege. Rather, the court demanded that such an inference be based on something more than the mere existence of an employment relationship." Data Gen. Corp. v. Grumman Sys. Support Corp., 825 F. Supp. 340, 352 (D. Mass. 1993); see also Rad Servs., Inc. v. Aetna Cas. & Sur. Co., 808 F.2d 271, 275 (3d Cir. 1986) ("[N]othing forbids imputing to a corporation the silence of its personnel.").

-12-

Here, there was more than a simple employment relationship. Two corporate officers pleaded the Fifth, one in addition to Carpenter. The corporations to which Carpenter's silence was permitted to be imputed, far from merely employing him, were in fact deemed to be his alter egos. The other officer who invoked the privilege was Carpenter's brother-in-law, Wayne Bursey, who was president of both of the new defendants; in the case of STEP, Bursey not only served as its president, but was appointed to the post by Carpenter and was the only other natural person affiliated with it. Given the identity between Carpenter and the corporations, the relationship between Carpenter and Bursey, and the extent of Bursey's own involvement as president of the new defendants, it was entirely reasonable to allow the jury the option of imputing even Bursey's silence to them,[9] let alone Carpenter's.

On the issue of corporate alter-ego character, the Appellants say that the district court should have instructed the jury that, under Massachusetts law, deeming a corporation an "alter ego" requires finding that it is a "sham." But this is not an accurate statement of Massachusetts law, under which finding a corporation a "sham" may at times be sufficient to point to an alter-ego conclusion, but is not necessary. The seminal

---

[9] Contrary to Appellants' protestations, the terms of the district court's instruction permitted the jury to impute Bursey's silence only to the new defendants, of which he was an officer, and not to BASI, of which he was merely a salaried employee.

Massachusetts case on disregarding the corporate form, My Bread Baking Co. v. Cumberland Farms, Inc., does not suggest that making a "sham" finding is a prerequisite. 233 N.E.2d 748, 751-52 (Mass. 1968), and neither do the later cases that have distilled My Bread into a list of considerations bearing on the decision whether to look past the corporate form. See, e.g., Kraft Power Corp. v. Merrill, 981 N.E.2d 671, 681 n.11 (Mass. 2013); Scott v. NG U.S. 1, Inc., 881 N.E.2d 1125, 1132-33 (Mass. 2008); Attorney Gen. v. M.C.K., Inc., 736 N.E.2d 373, 380 n.19 (Mass. 2000).

Having reviewed the jury instructions in their entirety, see Goodman, 380 F.3d at 47 ("Our review of the challenged instructions considers the big picture . . . ."), we are satisfied that they accurately depict the law on this issue. The district court did, in fact, instruct the jury that a corporation's having been "created as a mere device or sham to accomplish some ulterior purpose" could furnish one ground for disregarding the corporate form. But, quite properly, the instructions discussed other valid considerations as well.

## III.

The judgment of the district court is **AFFIRMED**.